**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| **DANIEL ALLEN,** individually and on behalf of similarly situated persons, <br><br> Plaintiff, <br><br> **v.** <br><br> **LANIER, INC.** and **MICHAEL H. LANIER,** <br><br> Defendants. | **Case No. 3:22-cv-00268-JDP** <br><br> **Jury Demanded** |

**RENEWED JOINT MOTION FOR (1) LEAVE TO AMEND THE COMPLAINT (2) CERTIFICATION OF A COLLECTIVE AND CLASS ACTION FOR SETTLEMENT PURPOSES, (3) APPROVAL OF A COLLECTIVE ACTION SETTLEMENT, (4) PRELIMINARY APPROVAL OF A CLASS ACTION SETTLEMENT, (5) APPROVAL OF NOTICE TO PUTATIVE CLAIMANTS, AND (6) SCHEDULING A HEARING FOR FINAL APPROVAL OF THE PARTIES' CLASS ACTION SETTLEMENT AGREEMENT, AND MEMORANDUM IN SUPPORT**

Named Plaintiff Daniel Allen, individually and on behalf of similarly situated persons ("Plaintiff"), and Defendants Lanier, Inc. and Harold Michel Lanier[1] ("Defendants"), by and through their undersigned counsel of record, hereby present this Renewed Joint Motion for (1) Leave to Amend the Complaint, (2) Certification of A Collective and Class Action For Settlement Purposes, (3) Approval of a Collective Action Settlement (4) Preliminary Approval of A Class Action Settlement, (5) Approval of Notice to Putative Claimants, and (6) Scheduling A Hearing For Final Approval of The Parties' Class Action Settlement Agreement, And Memorandum In Support (the "Motion"), seeking:

(1) leave to amend the Original Complaint to add a class claim under Wisconsin Minimum Wage Law[2],

(2) certification of a Fair Labor Standards Act ("FLSA") collective action and a Wisconsin

---

[1] In the Complaint, Harold Michel Lanier is misidentified as Michael H. Lanier.
[2] WI Stat. § 104.02 *et seq*., WI Stat. §109.03 *et seq.*

class action for settlement purposes,

(3) approval of the Parties' collective action settlement

(4) preliminary approval of the Parties' class action settlement,

(5) approval of notice to the putative claimants, and

(6) scheduling a hearing for final approval of the Parties' class action settlement agreement.

A copy of the Parties' agreed-upon Settlement and Release Agreement[3] ("Settlement Agreement"), the Class Notice and Claim Form, and the Amended Complaint are attached as Exhibits to this motion. The declarations of Plaintiffs' attorneys J. Forester and Katherine Serrano in support of this motion and brief is also attached as Exhibits. The Parties incorporate the following Memorandum in Support. The settlement meets the standards for approval and the Motion should be granted for the additional reasons that follow.

## MEMORANDUM IN SUPPORT

## I.    FACTS AND PROCEDURAL HISTORY

Defendants own and operate a chain of Domino's pizza stores located throughout Wisconsin. On May 12, 2022, Plaintiff filed suit against Defendants alleging minimum wage violations resulting from under-reimbursed vehicle costs incurred on the job in violation of the FLSA.[4] Plaintiff asserted those claims individually and on behalf of similarly situated delivery drivers currently and formerly employed by Defendants.  Plaintiff alleged that Defendants under-reimbursed their delivery drivers' vehicle costs incurred on the job, thereby reducing the workers'

---

[3] Following the Court's Order, the Parties amended the Settlement and Release Agreement. This updated version of the Settlement Agreement is attached and is currently with the respective Parties for final review and execution. In order to ensure compliance with the Court's deadline, the Parties have submitted a clean version of the amended Settlement Agreement for the Court's review and intend to file a supplement to this Motion in order to attach the fully executed Settlement Agreement upon completion.

[4] As part of the settlement and pursuant to Rule 15, the Parties agreed that Plaintiff would file an Amended Complaint to add a class claim under Wisconsin state law. Plaintiff has incorporated this request for leave to file this amendment with this Motion.

net wages below the federal and state minimum wage rates (nominal wages – unreimbursed vehicle costs = subminimum net wages). Further, Plaintiff alleged that Defendants applied the same reimbursement formula and rate to all of their delivery drivers during the recovery period.

Counsel and the law firms for the Parties have previously represented Domino's franchisees and delivery drivers including in *Burton v. AMNJ Enterprises, Inc., et al*, where the Eastern District of Wisconsin granted final approval of a settlement covering similar claims and tracking a similar structure as proposed here. Based on this experience, counsel negotiated an early and efficient resolution structure they believe is in the Parties' interest and serves the additional and ongoing interest of judicial economy.

The Parties discussed disclosure of data needed to evaluate liability and damages, followed by mediation. Defendants produced that data, which Plaintiff's counsel vetted, thoroughly reviewed, and analyzed through detailed spreadsheet calculations. Based on those calculations, the Parties mediated for a full day with a highly experienced wage and hour and class action mediator, Allen Blair, Esquire.

Defendants denied and continue to deny any liability or wrongdoing of any kind associated with the claims alleged by Plaintiff, and further deny that, for any purpose other than settling this matter, this action is appropriate for class or collective treatment. Plaintiff, on the other hand, asserts that Defendants failed to comply with federal and state minimum wage requirements embodied in the FLSA and applicable state wage laws. Class Counsel understands Defendants' position and defenses, but believes Plaintiff, individually and on behalf of the Class, could ultimately succeed at trial on the basis of common proof. All Parties recognize the uncertainty of the outcome, and appreciate the expense and time associated with further litigation, which motivated settlement. The attorneys who negotiated on behalf of the Parties are experienced

litigators, and they vigorously represented their clients' respective interests. *See* Forester Decl., ¶¶ 5-6. The settlement reached in this litigation constitutes a fair and reasonable compromise of a *bona fide* dispute involving several vigorously disputed legal and factual issues.  It considers the possible value of the claims balanced against the risk, effort, expense and delay of further litigation and possible appeals.

## II.    KEY SETTLEMENT TERMS

The settlement class, which is comprised of 483 individuals, is defined as:

> *All persons who worked for Defendants at Domino's Pizza stores in Wisconsin as delivery drivers between July 23, 2019 through April 1, 2023.*

Pursuant to Wisconsin state law and Federal Rule of Civil Procedure 23 ("Rule 23"), Class Members that do not return Claim Forms but do not opt-out of the settlement, i.e. are only members of the Rule 23 Class, will be bound by a state law release and will retain all rights available under law to bring claims under the federal Fair Labor Standards Act, subject to the statute of limitations and other defenses available to Defendants.

The Parties agreed to settle all putative class members' wage and hour claims by Defendants establishing a settlement fund inclusive of payments to the putative class, attorneys' fees, litigation costs, administration costs and a modest service award. All class members who do not opt-out, but do not submit a claim, will receive a minimum payment. The remaining settlement funds will be distributed to class members who submit claims based on the following equitable formula:

- For each Settlement Class Member, the total number of his/her recorded miles making deliveries for Defendants during the three-year period preceding the date the Court grants preliminary approval of the Agreement shall be his/her

"Individual Miles." The aggregate of all Individual Miles among all Settlement Class Members shall be the "Class Miles."

- Each Settlement Class Member's Individual Miles shall be divided by the Class Miles to obtain his/her "Payment Ratio."

- Each Settlement Class Member's Payment Ratio shall be multiplied by the Net Settlement Amount to arrive at his/her Potential Settlement Payment.

All settlement payments will be treated as non-taxable payments in reimbursement for incurred expenses. Using the calculation method outlined above, the average payment for those who opt-in is $194.27. The largest payment is $4,737.48 and the lowest payment is $0.13, however any individual who would receive a payment lower that $30 based on the above calculation method will instead receive a minimum $30 payment.

As agreed upon by the Parties, a proposed First Amended Complaint adding class claims under Wisconsin Minimum Wage Law is attached as an Exhibit to this Motion. As further explained within this Motion, the settlement covers both federal claims under the FLSA and Wisconsin state wage and hour claims under Rule 23. The damages allocated to the state law claims are different because the applicable law is different. There is no case law holding that it is a violation of Wisconsin state law to not reimburse employees for their mileage at the IRS rate if an employer fails to track their employee's actual expenses. Further, the State of Wisconsin sets the mileage reimbursement rate at $0.51 per mile plus the applicable sale tax making the highest reimbursement rate $0.539 per mile,[5] which is less than the applicable IRS rate. It is, therefore, likely that proving a violation of state law would be more difficult than the FLSA claim. Accordingly, the Parties allocated a minimum payment of $30.00 for those who do not exclude

---

[5] *See* https://doa.wi.gov/Pages/StateEmployees/ReferenceFleet.aspx (last visited April 20, 2023.)

themselves from the settlement class.  If an employee who worked for a longer period of time wants a larger settlement payment than the minimum payment for the state law claim, then the employee has the option of sending in a Claim Form and opting-in to the FLSA claim.

The release binding Class Members who do not opt out is limited to wage and hour claims (depending on whether they timely file a "Claim Form" (defined below)):

> Upon the Effective Date of the Settlement, the Class Representative and Authorized Claimants will release and forever discharge Defendants, and each of their former and present predecessors, successors, parents, subsidiaries, franchisors, insurers, and affiliates, whatever their current or former legal names or legal entity status, and each of their respective current and former owners, officers, directors, employees, partners, shareholders, and agents, and any other successors, assigns, or legal representatives ("Released Parties"), from any and all wage and hour claims, rights, demands, liabilities, and causes of action of every nature and description, whether known or unknown, for the Release Period.  This release includes claims arising out of, based on, or encompassed by facts asserted in the action, arising under the FLSA, the Wisconsin Minimum Wage Law, or any similar federal, state, municipal, or local laws, such as mileage reimbursement claims; minimum wage and overtime; off-the-clock claims; meal and rest break claims; and dual jobs claims. Without limiting the generality of the foregoing, the claim preclusion effect of this Settlement, and the judgment thereon, for res judicata purposes shall be co-extensive with this release of claims (collectively, the "Authorized Claimants' Released Claims").

> Upon the Effective Date of the Settlement, all Participating Settlement Class Members, regardless of whether they cash or otherwise negotiate their settlement check, will release and forever discharge the Released Parties from any and all wage and hour claims, rights, demands, liabilities, and causes of action of every nature and description, whether known or unknown, for the Release Period.  This release includes claims arising out of, based on, or encompassed by facts asserted in the action, arising under the Wisconsin Minimum Wage Law, or any similar state, municipal, or local laws, such as mileage reimbursement claims; minimum wage and overtime; off the clock claims; meal and rest break claims; and dual jobs claims. Without limiting the generality of the foregoing, the claim preclusion effect of this Settlement, and the judgment thereon, for *res judicata* purposes shall be co-extensive with this release of claims (collectively, the "Participating Class Members' Released Claims").

If 5% or more of the Settlement Class Members submit a request for exclusion (opt-out), Defendants shall have the right to cancel the Agreement in its entirety.  Based on the Parties

experience in similar cases, it is very rare to have more than a handful of employees opt-out. Some cases have no one opt out of the settlement. However, there have been cases in other industries where significant numbers of class members opt out, meaning that the defendants do not receive the closure expected because one or more individual and/or class action lawsuits are filed. To minimize this risk, the Defendants negotiated this provision specifically. Similar provisions have been approved in other cases. *E.g. Mason v. D&D Pizza Inc. et al.*, Case No. 1:21-cv-00107 (ED MO); *Hiebert v. 2 Bits Pizza LLC et al.*, Case No. 1:21-cv-00492 (D ID)

If the pay outs to opt-ins exceeds 40% of the Net Settlement Fund (i.e., $39,533.33), Defendants have the right, in their sole discretion, to cancel the Settlement Agreement in its entirety. Defendants specifically negotiated for this option. Defendant's settlement offers at the mediation were based on typical participation in such cases and the likely payout such participation would require. Had the parties negotiated and agreed to some sort of unusual steps to drive up participation beyond the normal levels, Defendants settlement offers would have been different because the anticipated payouts would have been different. It is rare for such a large percentage of the collective to opt-in. Based on the parties' prior experience and information from claims administrator CAC, approximately 18% of drivers typically opt-in to the settlement in similar cases, though participation ranges from as low as 12% to as high as 35%. This provision does not prejudice the potential opt-ins. If this clause is exercised, the Settlement Agreement is null and void and the Parties return to the *status quo ante*, maintaining all rights and arguments existing prior to the Settlement Agreement. Thus, the inclusion of this provision does not harm the rights of the Parties, or potential opt-ins. Based on service to the class in initiating this case and working with counsel to investigate and prosecute this litigation, Named Plaintiff Daniel Allen seeks a modest service award, subject to Court approval.

Subject to this Court's approval, Plaintiff's Counsel will seek fees equal to one-third (1/3) of the total settlement and actual litigation costs. Defendants will not oppose or object to this request for attorneys' fees and costs.

The Parties selected a settlement administrator, CAC Services Group, LLC ("CAC"), whose fees will be paid from the settlement amount. CAC is a company that "provides a comprehensive range of notification and claims administration services to the class action segment of the legal services community."[6] CAC utilizes address searches and updates to create an accurate database prior to mailing notice to the class. If a Notice and Claim Form is returned undeliverable, CAC will send the Notice and Claim Form to that individual via email and text message provided the email and cell number is contained in Defendants business records. The firms representing both Parties have worked with CAC numerous times on similar settlements and CAC estimated administration of the claims in this case would $9,778.22. The Parties have, therefore allotted $10,000.00 to an Administrative Fund to cover the cost of utilizing CAC's services. The extra $221.78 contained in the Administrative Fund is in case CAC's services exceed its estimate. CAC confirmed to counsel that it is ready to send notice to the class. In fact, CAC sent Class Action Fairness Act ("CAFA") Notices within ten (10) days of the Parties' previous filing for preliminary approval. A notice of collective action settlement (the "Notice") and claim form ("Claim Form") will be mailed to all putative class members as soon as practicable after the Court's preliminary approval of this settlement, the Notice and the Claim Form. The Parties' proposed Notice should be approved as it explains in clear terms (1) the nature of the settlement, (2) the factors used to determine the amount each class member has been allocated under the settlement, and (3) each

---

[6] *See* https://www.cacservicesgroup.com/about.cfm (last visited April 20, 2023).

delivery driver's right to submit a claim form, object to the settlement, or exclude themselves from the settlement.

The Settlement Administrator will send a notice of preliminary approval and settlement to each class member and each of them will have 50 days after mailing of the notice to submit a claim form and 50 days after mailing of the notice to file objections or opt out. Class members will also have the opportunity to appear at the final approval hearing to be set by the Court.

The Settlement Agreement also contains a ten thousand-dollar ($10,000.00) Reserve Fund. This is to account for any potential opt-in who turns in their Claim Form late. Based on counsel for the Parties' experience in similar cases, some class members ignore the Notice and Claim Form until a co-worker, or a former co-worker, tells them they received a settlement check larger than the minimum payment. Those class members will then investigate how to obtain a larger settlement check themselves and often contact the Settlement Administrator or Plaintiff's counsel. This provides an optional way for those late opt-ins to get claims resolved promptly. Late opt-ins are not required to use the Reserve Fund, however, without this option, their only choice is to pursue a new lawsuit against Defendants. The Reserve Fund is an efficient option that late opt-ins can use to promptly claim their portion of the settlement that also minimizes the risk to Defendants of another lawsuit. The Parties negotiated the amount of the Reserve Fund to ensure adequate funds are available for the entire statutory period to satisfy any late claims. Should any disputes arise regarding the Reserve Fund, these will be handled by the Parties working with the claims administrator, CAC Services Group. Such disputes will not require additional resources or attention from the Court, nor require that the case remain open with continuing jurisdiction over the matter through the completion of the Reserve Fund Period.

Any checks sent to opt-ins from the FLSA Fund that are not cashed within 180 days will become stale. Checks sent to settlement class members that are not cashed or otherwise negotiated after 180 calendar days will likewise become stale. The amount of any stale checks from the Minimum Payment Fund and the FLSA Fund will be deposited into the Wisconsin Department of Revenue's Unclaimed Property Fund.

Further, this settlement structure tracks settlements previously approved for a class and collective settlement for delivery drivers by federal judges within this Circuit and in Wisconsin, including in *Burton v. AMNJ Enterprises, Inc., et al*, Case No. 2:19-cv-00164 (ED WI)[7] and *Lewis v. Lucky 2 Logistics, LLC et al*., Case No. 2:19-cv-00323 (ED WI)[8].

## III.    ARGUMENT

## A.    The Preliminary Settlement Approval Process

Resolution of class action litigation by settlement is favored by the federal courts. *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996). Indeed, there is an "overriding public interest in favor of settlement of class actions." *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 307 (7th Cir. 1985).

Federal Rule of Civil Procedure 23 allows a court to certify a class conditionally or provisionally, for purposes of effectuating a settlement. *In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liability Litig*., 55 F.3d 768, 793-794 (3d Cir. 1995). A Federal Rule of Civil Procedure 23(b)(3) class action may only be approved if: (1) the individual class members are afforded a new opportunity to request exclusion from the settlement; (2) a hearing has been conducted; and (3) the court finds that the settlement is fair, reasonable, and adequate. Fed. R. Civ.

---

[7] *See* Dkt. No. 38 (Order granting final approval of class and collective action settlement).
[8] *See* Dkt. No. 30 (Order granting final approval of class action settlement).

P. 23(e). In making this determination, courts "must weigh the probabilities of victory or defeat as indicated by the legal or factual situation presented and determine whether the compromise, taken as a whole, is in the best interests" of the class members. *United Founders Life Ins. Co. v. Consumers National Life Ins. Co*., 447 F.2d 647, 655 (7th Cir. 1971) (internal quotations and citation omitted). Other factors considered are the complexity, expense, and likely duration of the litigation; reaction of the class to the settlement; the stage of the proceedings and the amount of discovery completed; the risks of establishing liability; the risks of establishing damages; the ability of the defendants to withstand greater judgment; and the range of reasonableness of the settlement funds to a possible recovery in light of all the attendant risks of litigation. *City of Detroit v. Grinnell Corp*., 495 F.2d 448, 463 (2d Cir. 1974).

## B.    Class / Collective Action Certification[9]

To obtain class certification, the proponent of class certification must show the elements required under Fed. R. Civ. P. 23.  Subsection (a) of Rule 23(a) requires:

> "(1) the members of the class are so numerous that separate joinder of each member is impracticable ["*numerosity*"];
>
> (2) there are questions of law or fact common to the class ["*commonality*"];
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ["*typicality*"]; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class ["*adequacy of representation*"].

In addition to Rule 23(a), the party seeking class certification must satisfy one of the alternative requirements of Rule 23(b).  In this case, the pertinent requirement is found in subsection (b)(3),

---

[9] For purposes of settlement only, Defendants have agreed not to contest the statements made in this motion regarding class and collective action certification.  However, Defendants do not waive, and expressly reserves, any defenses or denials that class certification is proper in this case should the Court not approve the settlement or the settlement not be perfected.

which provides that "…the questions of law or fact common to class members predominate over any questions affecting only individual members ["*predominance*"], and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy ["*superiority*"]." *Id.*

### 1. **Rule 23(a)(1): Numerosity**

Plaintiff asserts that his claims satisfy the "numerosity" requirement of Rule 23(a)(1), as the class list class consists of four-hundred eighty-three (483) current and former delivery drivers. Thus, the class is so numerous that separate joinder of each member is impracticable. *See, e.g. Mulvania v. Sheriff of Rock Isle. Cnty.,* 850 F.3d 849, 859-60 (7th Cir. 2017) ("While there is no magic number that applies to every case, a forty-member class is often regarded as sufficient to meet the numerosity requirement."); *Swanson v. American Consumer Indus., Inc.,* 415 F.2d 1326, 1333 & n.9 (7th Cir. 1969) (even 40 class members "is a sufficiently large group to satisfy Rule 23(a)"); see also Rubenstein, Newberg on Class Actions, § 3:12 ("[A] class of 40 or more members raises a presumption of impracticability of joinder based on numbers alone.").

### 2. **Rule 23(a)(2): Commonality**

The "commonality" test requires at least one question of law or fact common to each class member. *Wal-Mart Stores, Inc. v. Dukes,* 131 S.Ct. 2541, 2556 (2011)) ("even a single common question will do."). "The threshold for commonality under Rule 23(a)(2) is not high." *In re: Subway Footlong Sandwich Mktg. & Sales Practices Litig.*, No. 3:13-MD-2439, 2015 WL 12616163, at *2 (E.D. Wis. Oct. 2, 2015).

Here, Plaintiff asserts that all of the delivery drivers' claims arise out of the same legal theory (sub-minimum wages resulting from under-reimbursed vehicle costs) and the same questions of law and fact central to the claims against Defendants include:

a. Whether Defendants' reimbursement method provided sufficient vehicle reimbursement to its delivery drivers;

b. Whether the class members' vehicle-related expensed resulted in payment below minimum wage;

c. Whether Defendants willfully violated applicable wage and hour laws; and

d. Whether Plaintiff and the class members have sustained damages and, if so, the proper measure of damages.

Thus, for settlement purposes, the proposed class members share sufficient commonality.

Moreover, Plaintiff asserts that his claims further satisfy the "commonality" requirement because all class members held the same job, performed the same primary job duty of delivering pizzas and other food items to Defendants' customers using their personal vehicles, were compensated by similar hourly pay rates, drove similar delivery distances, Defendants reimbursed all delivery drivers with a comparable mileage rate and/or flat rate per delivery, Defendants did not track their actual vehicle costs, and their claims are based on the same legal theory.

The law on how to properly reimburse delivery drivers is unsettled, however, Plaintiff argues there are two recognized legal theories on which he can prevail.  Under Plaintiff's first theory of liability, Plaintiff argues Defendants are liable if they paid an unreasonably low reimbursement rate for vehicle expenses that results in a minimum wage deficit for delivery drivers. *See, e.g., Sullivan v. PJ United, Inc*., 362 F. Supp. 3d 1139, 1154 (N.D. Ala. 2018) (rejecting the theory that the IRS rate is the "presumptively reasonable rate" and holding that employers may reasonably approximate expenses to comply with minimum wage requirements); *Perrin v. Papa John's Int'l, Inc*. ("Perrin III"), 114 F. Supp. 3d 707, 711 (E.D. Mo. 2015) (denying summary judgment for plaintiffs on plaintiffs' theory that the IRS standard business mileage rate

is the only reasonable approximation of vehicle expenses and leaving question for jury to decide based on all of the evidence); *Perrin v. Papa John's Int'l., Inc.* ("Perrin I"), 2013 U.S. Dist. LEXIS 181749, *20-24 (E.D. Mo. Dec. 31, 2013) (explaining development of applicable law and citing cases). Under Plaintiff's second theory, Defendants are required to either: (1) track and reimburse actual vehicle costs, or (2) reimburse at the IRS standard business mileage reimbursement rate ("IRS rate"). If Defendants did not (1)track expenses and reimburse actual costs or (2) reimburse at the IRS rate, then Defendants are liable for failing to pay the minimum wage because the delivery driver's vehicle expenses caused their wages to fall below the minimum wage. *Hatmaker v. PJ Ohio*, 2019 U.S. Dist. LEXIS 191790, *5-22 (S.D. Ohio Nov. 5, 2019); *Zellagui v. MCD Pizza, Inc*., 59 F.Supp.3d 712, 716 (E.D. Pa. Nov. 13, 2014). Thus, the answer to either one of those two common questions will drive resolution of all claims asserted.

Further, in *Benton v. Deli Mgmt., Inc. d/b/a "Jason's Deli*, the court refused to decertify a class asserting a similar claim based upon "[t]he existence of so many" commonalities among the class, "including job descriptions, duties, and pay provisions (e.g., they were all paid hourly), as well as the central question of the reasonableness of Jason's Deli's current reimbursement." 2019 U.S. Dist. LEXIS 135522, *45-46 (N.D. Ga. Aug. 8, 2019) (emphasis added). Thus, *Benton* not only recognized that the reasonableness of an employer's reimbursements is a common question, but also recognized that it is the "central question" determinative of every class member's claim. *Id.*

### 3. **Rule 23(a)(3):  Typicality**

Rule 23(a)(3) requires a showing that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). Generally, a class representative is considered "typical" when his or her claims arise from the same practice or course

of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory. *Arwa Chiropractic, P.C. v. Med-Care Diabetic & Med. Suppliues, Inc.*, 322 F.R.D. 458, 464 (N.D. Ill. 2017). Although named plaintiffs may satisfy the typicality requirement even if there are "factual distinctions between the claims of the named plaintiffs and those of other class members, the requirement 'primarily directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large.'" *McFields v. Sheriff of Cook Cty.,* 2019 U.S. Dist. LEXIS 162934, at *15 (N.D. Ill. September 24, 2019) (quoting *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009) (internal quotation mark omitted).

Plaintiff alleges that he, just like all of the other delivery drivers, was not reimbursed for all vehicle expenses pursuant to Defendants' company-wide reimbursement method, which caused minimum wage violations. Thus, under either of the two legal theories described above, Named Plaintiff Allen, just like all of Defendants' delivery drivers, must prove that (a) Defendants failed to track and reimburse actual vehicle costs or reimburse at the IRS standard business mileage reimbursement rate, *or* (b) Defendants provided an unreasonable reimbursement rate. Thus, Named Plaintiff's claims are typical of the claims of all of Defendants' other delivery drivers.

4. **Rule 23(a)(4):  Adequacy of Representation**

Finally, Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The two key factors relevant to the determination of adequacy are an absence of potential conflict between the named plaintiff and absent class members, and an assurance of vigorous prosecution on behalf of the class. *Arwa Chiropractic, P.C. v. Med-Care Diabetic & Med. Suppliues, Inc.*, 322 F.R.D. at 465; *see also Retired Chi. Police Ass'n. v. City of Chi.,* 7 F.3d 584, 598 (7th Cir. 1993). Thus, for a class to be

certified, both the named plaintiff and class counsel must be able to serve the interests of the entire class. *Amchem Prods., Inc*., 521 U.S. at 626 n. 20, 117 S.Ct. 2231.

Named Plaintiff has already demonstrated that he will vigorously champion the class members' rights. He sought counsel experienced in vehicle reimbursement / minimum wage claims, provided his attorneys information about the claims, filed a complaint on behalf of all of Defendants' delivery drivers, and obtained a settlement beneficial to all of them, not just himself. Further, Mr. Allen's counsel are experienced wage and hour and class action litigators who will ably conduct the litigation, and have done so through this point. Moreover, Mr. Allen has no interest antagonistic to those of the putative class members.

### 5.    Predominance

In addition, Plaintiffs contend that the claims satisfy Rule 23(b)(3), in that common questions of law or fact predominate over any question of law or fact affecting only individual members of the class.  The primary consideration in assessing predominance is the proof necessary to establish the class members' claims under the applicable substantive law. *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir.1993).  Again, and as explained above, regardless of the applicable legal standard, that same legal standard will be applied class-wide. As explained above, *Benton* recognized that the "central" and predominant question dispositive of all class members' claims is the reasonableness of an employer's vehicle reimbursements, and Plaintiff asserts that this eclipses any differences between class members that an employer can identify. Id., 2019 U.S. Dist. LEXIS 135522, at *45-46.

### 6.    Superiority

Finally, Plaintiff contends that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  "Assessing in a single proceeding the extent of

[defendants'] liability, if any, for unpaid travel time and overtime owed to all of the proposed class members is superior to litigating dozens of individual wage-and-hour claims." *Laughlin*, 2018 WL 2538356, at *7 (*citing Thorogood v. Sears, Roebuck and Co*., 547 F.3d 742, 744 (7th Cir. 2008). There is no evidence that any class member desires to control his or her own claim, and any class member desiring that control may opt out of the Parties' settlement.  Counsel for the Parties are unaware of any other pending litigation against Defendants entailing the same claims asserted in this case.  For purposes of settlement, the class is manageable, it can easily be identified from Defendants' own records, a class action will foster judicial economy by avoiding duplicative litigation, and a class action will ensure that class members who are otherwise unaware that they possess a claim, or are unable to hire an attorney, will have their rights represented. These same considerations have warranted class certification in similar claims by pizza delivery drivers. See, e.g., *Perrin I*, 2013 U.S. Dist. LEXIS 181749, at *25-26; *Bass v. PJCOMN, Inc.*, 2011 U.S. Dist. LEXIS 58352, *10-11 (D. Colo. Jun. 1, 2011).

## C.     The Settlement is Fair, Adequate, and Reasonable Under Ryle 23(e)(2)

Under Rule 23(e)(2), courts determining the fairness of a class action settlement must consider whether: (A) the class representatives and class counsel have adequately represented the  class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e).  The Settlement readily satisfies all of the foregoing factors such that the Court will likely be able to grant final approval of the Settlement. *See* Fed. R. Civ. P. 23(e)(1)(B) (requiring courts at the preliminary approval stage to consider whether it will "likely be able to (i) approve the proposal [as fair, reasonable, and adequate] under Rule 23(e)(2); and (ii) certify the

class for purposes of judgment on the propos[ed settlement].").

The Class Representative and Class Counsel adequately represent the Class and the settlement was negotiated at arm's length. *See* Fed. R. Civ. P. 23(e)(2)(A) and (B). Class Counsel is highly experienced in mileage reimbursement cases and negotiated this settlement at arm's length. Mr. Allen has no conflicts of interest with the other members of the Settlement Class and was subject to the same payment practices as other potential members of the class.

A proposed settlement is presumed to be fair and reasonable when it is the result of arm's length negotiations. *Great Neck Cap. Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*, 212 F.R.D. 400, 410 (E.D. Wis. 2002) ("A strong presumption of fairness attaches to a settlement agreement when it is the result of this type of negotiation"); *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 375-76 (D.D.C. 2002) ("A 'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arms-length negotiations'") (internal quotation omitted). This presumption is applicable here.

As discussed above, the Settlement is the result of arm's length negotiations, including one day of mediation before a mediator experienced in mediating these types of claims. The settlement was reached only after Class Counsel analyzed information provided by Defendants in informal discovery.

The proposed Settlement also satisfies the third factor, which focus on the adequacy of relief to the class. In particular, the Court must consider multiple factors.

### 1.     The Costs, Risks, and Delay of Trial and Appeal

The first of these factors is "[t]he costs, risks, and delay of trial and appeal." Fed. R. Civ. P. 23(e)(2)(C)(i). Here, there is no guarantee Plaintiff will be successful on the merits. The law is unsettled on whether Defendants were required to pay the IRS rate with many courts holding

18

the IRS rate is not mandatory and delivery drivers may be reimbursed a reasonable approximation of their expenses. *Matias-Rossello v. Epoch LLC*, 2022 WL 993601, *7-8 (D.P.R. Apr. 1, 2022) ("several courts have held that a reasonable reimbursement mechanism is not limited to tracking actual expenses or the IRS' business mileage rate, for they have also reached the conclusion that a reasonable approximation of expenses is allowed in view of the FLSA's regulatory framework.").

Defendants argue they did, in fact, reimburse drivers a reasonable approximation of their expenses. Plaintiff bears the burden of demonstrating he and other class members were not paid the applicable minimum wage. *Kasten v. Saint-Gobain Performance Plastics Corp.*, 556 F. Supp. 2d 941, 952 (W.D. Wis. 2008). Based on counsel for the Parties experience in similar cases, it is likely that most of the potential class members will not have any records of their vehicle expenses, making proving the reimbursement paid by Defendants was unreasonable a difficult proposition. Thus, if the Court adopted the majority approach, there is the possibility that Plaintiff's claims fail.

Additionally, there is risk of denial of class certification. *See Sullivan v. PJ United, Inc.*, 2018 U.S. Dist. LEXIS 143236 (N.D. Ala. Jun. 22, 2018). This would lower the amount of any potential recovery. It also had the potential of increasing the costs if multiple former drivers bring individual claims against Defendants.

Further, the legal issues concerning class certification and proper reimbursement are susceptible to appeal. Any such appeal would delay any potential relief to the class.

2.     The effectiveness of any The Effectiveness of any Proposed Method of Distributing Relief to the Class, Including the Method of Processing Class Member Claims

The Settlement utilizes the records maintained by Defendants in the ordinary course of business to create a class list. CAC utilizes change of address registries to locate the most recent address for each member of the class and any notice that is returned undeliverable will be followed

up with an email and text notice, if the class members' email address and cell number is readily available in Defendants' records. Accordingly, the notice program includes a high rate of direct notice to Settlement Class Members.

### 3. The Terms of any Proposed Award of Attorneys' Fees, Including Timing of Payment

The proposed attorneys' fees and expenses are fair as outlined in Section F *infra*.

### 4. The Presence of Any Agreements Between the Parties Separate from the Settlement Agreement

There are no such agreements in this case. As such, this factor weighs in favor of preliminary approval.

The fourth factor, whether class members are treated equitably relative to each other, Fed. R. Civ. P. 23(e)(2)(D), also supports preliminary approval. The proposed Settlement treats the Settlement Class Members equitably relative to each other, as all Class Members will have the same remedy options.

## D. Certification of the FLSA Collective Action

This Circuit recognizes three factors in certifying an FLSA collective action: "(1) the disparate factual and employment settings of the individual plaintiffs, (2) the various defenses available to the defendant which appear to be individual to each plaintiff, and (3) fairness and procedural considerations." *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 771–72 (7th Cir.2013).

Here, all class members performed the same primary job duty of delivering pizzas and other food to Defendants' customers using their personal vehicles, they were compensated by similar hourly pay rates, drove similar delivery distances, Defendants reimbursed them with the same or comparable rate per mile and/or delivery, and their claims are based on the same legal

theory. As discussed more fully above, Plaintiff asserts that employees may recover vehicle costs when the employer's estimation of such costs is unreasonable, and the shortfall results in minimum wage deficits. Alternatively, Plaintiff asserts that Defendants must either track and reimburse actual vehicle costs or reimburse at the IRS rate. Either way, the same legal standard will apply class wide. This is sufficient to warrant certification of Plaintiff's FLSA claim for settlement purposes.

**E.      The Court Should Preliminarily Approve the Settlement**

At the preliminary approval stage, the Court's task is merely to evaluate whether the Settlement is within the "range of possible approval." *In re: National Collegiate Athletic Association Student-Athlete Concussion Injury Litig.,* 314 F.R.D. 580, 588 (N.D. Ill. Jan. 26, 2016) (citing *Gautreaux v. Pierce*, 690 F.2d 616, 621 n. 3 (7th Cir.1982)). Settlement negotiations that involve arm's length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness. *Id*. (citing Manual for Complex Litigation, Third, § 30.42 (West 1995) ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.") (internal quotation marks omitted).

The traditional means for handling wage claims like those at issue here — individual litigation — would unduly tax the court system, require a massive expenditure of public and private resources and, given the relatively small value of the claims of the individual class members, would be impracticable. *Id.* The proposed Settlement, therefore, is the best vehicle for class members to receive the relief to which they are entitled in a prompt and efficient manner.

The *Manual for Complex Litigation* describes a three-step procedure for approval of class action settlements:

(1)    Preliminary approval of the proposed settlement at an informal hearing;

(2)    Dissemination of mailed and/or published notice of the settlement to all affected class members; and

(3)    A "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*Manual for Complex Lit.*, at § 21.632–34. This procedure, used by courts in this Circuit and endorsed by the leading class action treatise, safeguards the due process rights of absent class members and enables the Court to fulfill its role as the guardian of class interests. *See* 2 Newberg & Conte, § 11.22, *et seq.*

The Parties request that the Court take the first step in the settlement approval process by granting preliminary approval of the proposed Settlement. The purpose of preliminary evaluation of proposed class action settlements is to determine whether the settlement is within the "range of reasonableness," and thus whether notice of the settlement's terms should be issued to the Class and a formal fairness hearing scheduled. *Id.,* 11.25 at 11-36, 11-37.  Thus, at this stage, the district court decides whether the proposed settlement falls "within the range of possible approval." *See Gautreaux v. Pierce*, 690 F.2d 616, 621 (7th Cir. 1982).

In deciding whether to give preliminary approval to the settlement, the court considers the strength of plaintiffs' case compared to the settlement amount; the complexity, length and expense of the litigation; any opposition to settlement; the opinion of competent counsel; and the stage of the proceedings (including the amount of discovery completed) at the time of settlement. *Synfuel Technologies, Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006); *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014).  Neither formal notice nor a hearing is required at the preliminary approval stage; the Court may grant such relief upon an informal

application by the settling parties, and may conduct any necessary hearing in court or in chambers, at the Court's discretion. *See, e.g., In re Trans Union Corp. Privacy Litig.,* 2008 WL 11358136, at *6 (N.D. Ill. Jan. 3, 2008) (preliminary approval inquiry often involves an informal presentation of the parties' proposals to the court). Here, preliminary approval of the Settlement Agreement is warranted.

### 1. Factor 1: The Strength of Plaintiffs' Case Compared to the Terms of the Proposed Settlement

Plaintiff's claims are supported by substantial evidence, but ultimately those claims may depend upon persuading a jury to adopt their evidence over Defendants' competing evidence and arguments. As some courts recognize, all claims may depend on competing expert vehicle costing testimony. *Perrin v. Papa John's Int'l., Inc.* ("*Perrin II*"), 2014 U.S. Dist. LEXIS 133974, *12 (E.D. Mo. Sept. 24, 2014) (recognizing battle of vehicle costing experts); *Villalpando*, 2016 Dist. LEXIS 53773, at *45. "This would have resulted in a lengthy and expensive battle of the experts, with the costs of such a battle borne by the class—exactly the type of litigation the parties were hoping to avoid by settling." *Wong v. Accretive Health, Inc*., 773 F.3d 859, 863 (7th Cir. 2014) Also, Plaintiff's claim may depend on what test the Court decides to apply. Compare, e.g., *Sullivan v. PJ United, Inc*., 362 F. Supp. 3d 1139, 1154 (N.D. Ala. 2018); *Perrin II*, 2014 U.S. Dist. LEXIS 133974, at *12 (battle of experts over reasonableness of employer's vehicle reimbursement rate) with *Hatmaker* (employer must either reimburse actual vehicle costs or reimburse at the IRS rate). Indeed, "it is virtually impossible to predict with certainty which testimony would be credited…". *In re Warner Comm'ns. Sec. Litig*., 618 F. Supp. 735, 744 (S.D.N.Y. 1985) aff'd, 798 F.2d 35 (2d Cir. 1986).

Predicting how a jury would weigh the evidence here is particularly difficult because no known benchmarks exist for how a jury might decide or value the claims. Additionally, not only

is the law is unsettled on whether Defendants were required to pay the IRS rate as outlined above in Section E.(1), but the Department of Labor has also issued guidance that the IRS rate is not required.  *See Matias-Rossello*, 2022 WL 993601, *7-8; FLSA 2020-12 Opinion Letter. Defendants' defense centers around the argument that the reimbursement rate they paid drivers was a reasonable approximation of their expenses and allowed under the applicable law.  Even if Plaintiff prevailed at trial, it is unlikely Plaintiff could demonstrate a willful violation of the FLSA because the Department of Labor provided explicit guidance that the IRS rate is not required and the majority of case law only requires a reimbursement rate based on reasonable approximation. For the same reason, it is likely that Defendants could show any violation of the FLSA was in good faith and Defendants had reasonable grounds to believe the reimbursement rate complied with the FLSA.    Thus, even if Plaintiff prevailed at trial, it is unlikely he would be entitled to liquidated damages or a third year of liability under the FLSA.

Based on the data provided by Defendants at mediation, damages for three years of reimbursement with liquidated damages, calculated at the applicable IRS rate is $719,619.16.00.[10] Even if the class prevailed, which as explain above is questionable, the likelihood of liquidated damages and the third year of liability is low.  If you remove the liquidated damages and third year of liability, the potential recovery is reduced to $249,304.68.  Many class members were paid above the minimum wage—totaling approximately $40,000.00.  This would serve as an offset against any potential recovery.  As a result, this offset would lower any potential recovery to $209,304.68.

As explained above, it is possible, even likely, the class members would recover less than the damages they allege, or no damages at all.  Plaintiff and his counsel necessarily, and properly,

---

[10] The IRS rate used for this calculation is a blended IRS reimbursement rate of $0.565 per mile.

weighed the risk of proceeding with an assured recovery obtained through negotiation.  Here, the settlement of $182,000.00 represents a compromise at a reimbursement rate that is a little more than the midway point between the IRS rate and the actual reimbursement rate paid by Defendants to delivery drivers minus the $40,000.00 offset for payments above the minimum wage.  While Plaintiff and his counsel began negotiations seeking three years' worth of damages, liquidated, they ultimately settled for three years' worth of damages at a reimbursement rate lower than the IRS rate, unliquidated, due to the strong defenses outlined above.  In sum, the uncertainty of the amount of any potential recovery warrants approval of settlement that is, effectively, the mid-point between the Parties' positions at the start of mediation.

Plaintiff also recognizes some risk of denial of class certification. *See Sullivan,* 2018 U.S. Dist. LEXIS 143236.  If class certification is denied, the value of this case is obviously lowered.  Thus, the settlement amount is reasonable given this risk which Plaintiff's counsel weighed in negotiating the settlement amount.

### 2.  Factor 2:  The likely complexity, length and expense of continued litigation

District Courts in this Circuit have acknowledged that class actions can be "time-consuming and expensive."  *Schmidt v. Bassett Furniture Indus.*, No. 08-C-1035, 2009 WL 3380354, at *11 (E.D. Wis. Oct. 20, 2009). This case is no exception.  As explained above, this litigation involved complex and novel issues. This litigation may be expensive, both to the Parties in terms of costs and time and to the Court in terms of deciding difficult and complex issues.  By reaching a favorable settlement now, the Parties have avoided the need to resolve significant and time-consuming motions and discovery issues and the resources a jury trial would have entailed.  In addition, reducing the class trial to a judgment and the eventual appeal would likely involve complex and time-consuming issues.  Making substantial monetary relief available now, without

significant additional time, effort, or risk, should weigh heavily in favor of approval.

### 3.  Factor 3:  The amount of opposition to settlement among affected parties

Plaintiff's counsel is presently unaware of any opposition to the settlement. They have observed the extreme rarity of objections to similar settlements in numerous similar cases.  In any event, this factor can be further considered after notice and opportunity to object.

### 4.  Factor 4:  The opinion of competent counsel

Counsel for both sides fully support the Settlement Agreement, and this factor favors preliminary approval of the Settlement.  In deciding whether to approve the settlement, the court is "entitled to give consideration to the opinion of competent counsel."  *Isby v. Bayh,* 75 F.3d 1191, 1200 (7th Cir. 1996). When evaluated in light of the relevant factors, the proposed settlement is fair, reasonable, and adequate and should be approved.

### 5.  Factor 5:  The stage of the proceedings and amount of discovery completed

Although this case settled efficiently, counsel for the Parties have litigated several similar claims by pizza delivery drivers around the nation.  Thus, they were able to quickly and efficiently identify the critical data needed to both evaluate the claims and calculate potential damages.  That data was disclosed, then utilized to evaluate both potential liability and various damage scenarios. The Parties were also able to laser-focus their settlement efforts, and engaged a highly respected and experienced mediator, Allen S. Blair, to facilitate these efforts.  Thus, both sides understood the relevant evidence prior to settlement, and efficiently achieved settlement without additional involvement by this Court.  Such achievement warrants settlement approval.

### 6.  Additional Factor for FLSA Collective Action:  Existence of *Bona Fide* Dispute

To effectuate a binding release, a settlement of FLSA claims requires judicial or U.S. Department of Labor approval of FLSA settlements. *Woods v. Club Cabaret, Inc.,* 2017 U.S. Dist.

LEXIS 198896, *14 (C.D. Ill. May 17, 2017) (recognizing that private settlements of FLSA claims are invalid); *Hernandez v. Cameo Invs., LLC,* 2019 U.S. Dist. LEXIS 186445, *2-3 (W.D. Wis. Oct. 28, 2019) (citing *Walton v. United Consumers Club,* 786 F.2d 303, 306 (7th Cir. 1986) (same).

Courts in this Circuit have approved FLSA collective actions settlements which were found to be "a fair and reasonable resolution of a bona fide dispute" under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq. See, e.g., Soto v. Wings 'R Us Romeoville, Inc.*, No. 15-CV-10127, 2018 WL 1875296, at *1 (N.D. Ill. April 16, 2018) (citing *Lynn Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982) and *Walton v. United Consumers Club, Inc*., 786 F.2d 303, 306 (7th Cir. 1986)). "'[A]pproval of settlements in collective actions under the FLSA generally involves less stringent standards than Rule 23 class settlements.'" *Hall v. High One Machs., Inc.,* 2016 U.S. Dist. LEXIS 131009, *11 (E.D.N.C. Sept. 26, 2016) (quoting *DeWitt v. Darlington Cnty.,* 2013 U.S. Dist. LEXIS 172624, *10-11 (D.S.C. Dec. 6, 2013)).[11]

Here, Plaintiff alleged that Defendants' under-reimbursed automobile expenses caused minimum wage violations. Defendants deny Plaintiff's substantive allegations, assert that Plaintiff was reasonably reimbursed for vehicle costs, and contend that Plaintiff was compensated at or above the applicable minimum wage. Thus, the claims were actually in dispute.

Defendant produced, and the Parties analyzed, detailed data specific to Plaintiff's allegations of liability and damages. If a jury agreed with Plaintiff's allegations about a reasonable reimbursement rate, Defendants could have faced a sizable monetary judgment, which could include liquidated damages, as well as the obligation to pay Plaintiffs' attorneys' fees and costs. On the other hand, if a jury agreed with Defendants, Plaintiffs would obtain no recovery

---

[11] Some courts hold that "[b]ecause 'the standard for approval of an FLSA settlement is lower than for a Rule 23 settlement,' satisfaction of the *Grinnell* [approval] factor analysis will, necessarily, satisfy the standards of approval of the FLSA settlement." *Ramos v. Nikodemo Op. Corp.,* 2017 U.S. Dist. LEXIS 216246, *14-15 & 20 (E.D.N.Y. Aug. 7, 2017) (quoting and citing cases).

whatsoever. These facts clearly demonstrate the existence of a *bona fide* dispute.

The settlement is fair and reasonable for the same reasons explained above.

**F.     Attorney's Fees and Costs Provided in the Settlement are Appropriate**

The Settlement Agreement provides that Plaintiff's counsel will recover their fees from the Settlement Amount.  The FLSA and Wisconsin wage and hour laws each contain fee and cost shifting provisions.  The Seventh Circuit recognizes that the purpose of fee shifting is to "assure competent representation for plaintiffs" and to enable plaintiffs to vindicate their rights.  *Pickett v. Sheridan Health Care Ctr.,* 664 F.3d 632, 643 (7th Cir. 2011) (quoting *In re Cont'l. Ill. Sec. Litig.,* 962 F.2d 566, 573 (7th Cir. 1992)) (purpose of fee-shifting is to assure competent representation"); *Kovacs v. U.S.,* 739 F.3d 1020, 1027 (7th Cir. 2014) (recognizing that fee-shifting serves "an important public-interest function … by making it possible for persons without means to bring suit to vindicate their rights.").  Simply stated, fee awards to counsel further the remedial goals of the FLSA of protecting workers from wage abuses.  *See A.H. Phillips v. Walling*, 324 U.S. 490, 493 (1945) (FLSA's purpose is to ensure every employee receives "a fair day's pay for a fair day's work"). The Supreme Court has "recognized consistently that ... a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).

Section 16(b) of the FLSA, 29 U.S.C. § 216(b), provides that where an employee prevails in an action, an award of attorneys' fees is mandatory. *Alyeska Pipeline v. Wilderness Society*, 421 U.S. 240, 261 n.34 (1975); *Uphoff v. Elegant Bath, Ltd.,* 176 F.3d 399, 406 (7th Cir. 1999).  The Court has discretion to approve reasonable fees as a percentage of a settlement fund.  *Boeing Co.,* 444 U.S. at 478-79.

The Settlement Agreement here authorizes an award of fees equal to one-third (1/3) of the

total settlement amount. Under a common fund theory, courts in this District and Circuit have commonly found that an award of attorneys' fees should be calculated based upon the total funds made available. *See Bitner v. Wyndham Vacation Resorts, Inc*., No. 13-CV-451-WMC, 2017 WL 11674541, at *2 (W.D. Wis. Nov. 9, 2017) (Court granted attorneys fee request of $500,000 from a $1,500,000 gross settlement fund, equating to 33% of the common fund); *Hoffmaster v. Coating Place, Inc.*, No. 16-CV-258-WMC, 2017 WL 1968329, at *2 (W.D. Wis. May 11, 2017) (Court granted attorneys fee request of $62,500 from a $187,500 gross settlement amount, equating to 33% of the common fund).[12] Courts in this Circuit have found that an award within this range falls within the normal percentage range of common fund attorney fee awards approved by courts. *Id*.; *Young*, 2020 WL 969616 at *6; *McKinnie*, 678 F. Supp. 2d at 816 (citing a 1996 Federal Judicial Center Study finding that fee awards in common fund class actions were between 20% and 40% of the gross monetary settlement in Newberg on Class Actions § 14:6, p. 558 (4th ed.2002)).

To ensure a fee award is reasonable, this Circuit considers "the *Hensley* factors:"

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Anderson v. AB Painting & Sandblasting, Inc.,* 578 F.3d 542, 544 & n. 1 (7th Cir. 2009) (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 430 n.3 (1983).

Further, the modest attorneys' fees sought by Class Counsel are supported by the market-

---

[12] *See also Young v. Rolling in the Dough, Inc.*, No. 1:17-CV-07825 2020 WL 969616 at *6 (N.D. Ill. February 26, 2020) (*citing Masters v. Wilgelmina Model Agency, Inc.,* 473 F.3d, 423, 437 (2d Cir. 2007*); see also Boeing Co. v. Van Gemert,* 444 U.S. 472, 480, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980) (stating that the right of absentee class members "to share the harvest of the lawsuit upon proof of their identity, whether or not they exercise it, is a benefit in the fund created by the efforts of the class representatives and their counsel.").

based approach and the lodestar method, in addition to the percentage of the fund method. Accordingly, the attorneys' fees and costs requested herein are appropriate.

1. ***Hensley* Factors (2), (3), (9), & (10): Novelty and Difficulty of the Questions Presented; Skill, Experience, Reputation, and Ability of the Attorneys; and "Undesirability" of the Case.**

As set forth above, the legal theories at issue in this case are relatively novel and continue to be clarified through litigation including among the Circuit Courts of Appeal. Even aside from the unique complexities presented by this case, Plaintiff would need to provide documentary evidence, lay testimony, and expensive expert testimony sufficient to establish liability and damages for Plaintiffs. Regardless, of the outcome at trial, post-judgment appeals would be likely. Despite these specific and general challenges, Plaintiff's counsel possesses extensive experience in analogous cases. *See*, Forester Declaration. This experience was leveraged here, as in other cases, to produce an efficient outcome for all involved (including the judicial system). In light of the novelty and difficulty of the questions presented, the skill, experience, reputation, and ability of Plaintiff's attorneys, and "undesirability" of the case, *Hensley* factors (2), (3), (9) and (10) all strongly support Plaintiffs' counsels' requested fee.

2. ***Hensley* Factors (5) & (8): Amount Involved and Results Obtained; and Customary Fee.**

The Supreme Court recognizes that the result achieved is "the most critical factor" in calculating a reasonable fee award. *Hensley*, 461 U.S. at 436; *Robinson v. Perales,* 894 F.3d 818, 835 (7th Cir. 2018) (following *Hensley* and *Farrar v. Hobby,* 506 U.S. 103, 108 (1992)). *Hackett* particularly noted that "[c]hallenging compensation for delivery drivers under the FLSA is not a cut and dried affair." *Hackett v. ADF Rest. Invs.*, 259 F. Supp. 3d 360, 369 (D. Md. 2016). *Hackett* further found that it is particularly appropriate to award Plaintiffs' counsel lodestar rates because due to the uncertain nature of challenging compensation for delivery drivers under the FLSA, "it

is quite likely that, but for this lawsuit, [Defendants'] drivers in Defendants' stores would not have known that they had a viable cause of action and thus, in the end, received more compensation than they anticipated." *Id.*

Given the novelty and difficulty of cases involving minimum wage laws based on under reimbursed vehicle costs, the delivery drivers' recovery at trial could have ranged anywhere from a sizable recovery to very little to nothing at all. Thus, the amount agreed to by the Parties following contentious mediation and subsequent negotiations is a very successful result for Plaintiff and all other delivery drivers. The total settlement amount is the result of good faith, but contentious, arm's-length negotiation and represents an excellent result for the class. Some class members will receive substantial payments for their alleged unreimbursed vehicle expense. And while some class members will receive less than others – based on relatively fewer miles driven within the applicable recovery period – all class members will receive a minimum payment as defined in the Settlement Agreement.

Moreover, although the percentage fee requested here is routine in common fund, contingent fee cases, it is less than Plaintiff's counsel's customary contingent fee in wage and hour litigation. Here, the named Plaintiffs signed contingency fee agreements with Plaintiff's counsel agreeing to fees equaling 40% of the common fund.  However, Plaintiff's Counsel cut their percentage to one-third (1/3) in an effort to resolve this case and increase the amount paid to Plaintiffs.

3. *Hensley* **Factors (1) & (4): Time and Labor Expended; and Preclusion of Other Work.**

To date, Plaintiff's counsel has spent significant time litigating this case with no assurance of any recovery at all. This includes time spent investigating the facts, preparing and filing pleadings; reviewing documents produced by the Named Plaintiff and by Defendants; analyzing

Defendants' delivery, mileage and reimbursement data; communicating with the named Plaintiff; creating computerized damages models; researching and drafting a mediation statement; participating in the mediation; negotiating the terms of the settlement; drafting approval papers; and seeking Court approval of the settlement.

This work naturally precluded counsel from pursuing other litigation opportunities. In addition, Plaintiff's counsel will be required to expend significant additional time connected with administering the settlement, including communicating with numerous individual Plaintiffs.

### 4. *Hensley* Factor (12): Awards in Similar Cases.

Plaintiff's counsel's fees equal to one-third (1/3) of the total recovery have been approved in the same types of claims against other pizza delivery companies. *See, e.g., Wilson v. DFL Pizza, LLC*, 2019 U.S. Dist. LEXIS 114039, *12 (D. Colo. Jul. 10, 2019) (awarding one-third fees); *Kirkwood v. Noble Food Grp., Inc*., 2019 U.S. Dist. LEXIS 10146, *1-4 (W.D. Wash. Jan. 22, 2019) (same); *Armes v. Hot Pizzas, LLC*, 2017 U.S. Dist. LEXIS 89920, *12-15 (D. Ariz. Jun. 9, 2017) (same); *Hoffman*, 2017 U.S. Dist. LEXIS 459, at *30 (same); *Hackett*, 259 F.Supp.3d at 367-69 (same); *Prince v. Perfect Delivery, Inc.,* Case No. 8:17-c-01950-AMQ (D.S.C. Jul. 23, 2018) (ECF No. 62), at 10-11 (same).

Notably, the percentage method is the preferred method of fee recovery because, among other things, it aligns the lawyers' interest in being paid a fair fee with the interest of the clients and most fairly correlates counsel's compensation to the benefit conferred on the clients.

Compensating counsel in common fund cases on a percentage basis makes good sense. First, it is customary for contingent fee attorneys to be compensated on a percentage-of-the-recovery method. Second, it rewards efficiency and provides plaintiffs' counsel with a strong incentive to effectuate the maximum possible recovery under the circumstances. Third, use of the

percentage method decreases the burden imposed on the court by the "lodestar" method and assures that plaintiffs do not experience undue delay in receiving their share of the settlement.

The diligent work by Plaintiff's counsel in obtaining relief for all Defendants' delivery drivers should be appropriately compensated. Given the risks they incurred in litigating this case on a contingent fee basis, the requested attorneys' fees are reasonable and appropriate in this case.

### 5. The Market-Based Approach Supports Awarding a Percentage of the Fund in Attorneys' Fees

The Seventh Circuit uses a "market-based approach" to set the percentage of the total settlement common fund to be awarded as reasonable attorneys' fees. This approach requires the court to examine fee contracts privately negotiated for similar litigation and the fees in similar cases. *Taubenfeld v. AON Corp.*, 415 F.3d 597, 599 (7th Cir. 2005). The role of the court in this framework "is not…to determine the equivalent of the medieval just price. It is to determine what the lawyer would receive if he were selling his services in the market rather than being paid by court order." *Steinlauf v. Continental Illinois Corp.*, 962 F.2d 566, 568 (7th Cir. 1992). The objective of this analysis is to award the attorneys what they would have gotten had an arm's-length negotiation been feasible. *Id.* at 572. An important element of this analysis is determining the market rate for attorneys' fees in class action common-fund cases. *See In re Synthroid Marketing Litigation*, 264 F.3d 712, 718 (7th Cir. 2001) (Synthroid I) ("We have held repeatedly that, when deciding on appropriate fee levels in common-fund cases, courts must do their best to award Counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time.")

As the Seventh Circuit outlined in *Synthroid I*, which remains the standard in this Circuit for evaluating the propriety of common-fund attorneys' fees requests, courts determining an appropriate percentage of the fund to award in attorneys' fees must "estimate the terms of the

contract that private plaintiffs would have negotiated with their lawyers, had bargaining occurred at the outset of the case (that is, when the risk of loss still existed)." *Synthroid I*, 264 F.3d at 718. The inquiry is what "arrangements that satisfy willing buyers and sellers rather than the compensation that a judge thinks appropriate as a matter of first principle." *In re Synthroid Marketing Litigation,* 325 F.3d 974, 976 (7th Cir. 2003) (Synthroid II). In determining the market value of attorneys' fees, the court must look to "actual fee contracts that were privately negotiated for similar litigation, information from other cases, and data from class-counsel auctions." *Williams v. Rohm and Hass Pension Plan*, 658 F.3d 629, 635 (7th Cir. 2011) (citing *Taubenfeld*, 415 F.3d at 599).

In the Seventh Circuit, when "the prevailing method of compensating lawyers for similar services is the contingent-fee, then the contingent fee is the 'market' rate." *Kirchoff v. Flynn*, 786 F.2d 320, 324 (7th Cir. 1986); *see also Gaskill v. Gordon*, 160 F.3d 361, 363 (7th Cir. 1998) ("[I]t is commonplace to award the lawyers for the class a percentage of the fund in recognition of the fact that most suits for damages in this country are handled in the plaintiff's side on a contingent fee basis."); *McKinnie v. JP Morgan Chase Bank*, N.A., 678 F. Supp. 2d 806, 814-15 (E.D. Wis. 2009) (noting that where a case would likely be handled on a class action contingency fee basis in the private market, awarding attorneys' fees as a percentage of the common fund is appropriate because it most closely replicates the market for the services required). Where plaintiffs engaged in litigation have agreed to a contingent fee of one-third of the net recovery, as the Named Plaintiff did in this matter, these agreements "define the market." *Greenville,* 904 F. Supp. 2d at 908.

Plaintiff includes with this Petition supporting Declarations from attorneys J. Forester and Katherine Serrano, both of who practice complex wage and hour litigation in this market and state that the market rate for representation of plaintiffs in such cases is between 30% and 40%. The

Seventh Circuit has identified several factors that influence the market rate for legal fees: "the risk of nonpayment a firm agreed to bear,… the quality of [the firm's] performance,… the amount of work necessary to resolve the litigation, and… the stakes of the case." *Synthroid I* at 721; *Sutton v. Bernard,* 504 F.3d 688, 694 (7th Cir. 2007). The *Synthroid* factors confirm that an award of one-third of the settlement fund as fees and costs is reasonable. This award is consistent with the rates of other attorneys in the community and fee awards in class action cases and is appropriate given the risks of this case and the result achieved for the Class.

### 6. The Attorneys' Fees Request is Additionally Supported by the Lodestar Method.

In addition to being supported by the percentage of the fund method, Class Counsel's attorneys' fees request is also supported by the lodestar method. As supported by the attached declarations of J. Forester and Katherine Serrano, when using the lodestar method, the fees requested are reasonable and supported by the work done by counsel to date.

Courts in the Seventh Circuit have generally found that a showing or analysis of counsel's billing records (in addition to the *Synthroid* factors) is not needed. *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 598 n.27 (N.D. Ill. 2011) ("[U]se of a lodestar cross-check in a common fund case is unnecessary, arbitrary, and potentially counterproductive."). This is because Class Counsel's requested fees are within the market rate for common-fund fee awards in the Seventh Circuit, the recovery for Class Members is substantial, and the settlement does not indicate that it was the product of collusion at the expense of class members. *See Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 636 (7th Cir. 2011) ("[C]onsideration of a lodestar check is not an issue of required methodology."); *In re Dairy Farmers of Am., Inc*., 80 F. Supp. 3d at 850 ("For attorneys who are arguing for a percentage-of-the-fund fee award, any delineation of hours is seemingly unnecessary . . . .").

As the Seventh Circuit has noted, the lodestar "does not reflect the factual and legal merits of the claim – the fact that at the outset of the litigation, no matter how dazzling the array of legal talent or how many hours will eventually be logged, there is nonetheless the possibility of no recovery." *Cook v. Niedert*, 142 F.3d 1004, 1015 (7th Cir. 1998) (internal citations omitted). A lodestar cross-check is not required where a percentage-of-the-fund approach is used to determine the appropriate attorneys' fees. *See Williams v. Rohm and Haas Pension Plan*, 658 F.3d 629, 363 (7th Cir. 2011) (citing *Cook*, 142 F.3d at 1013)). Although Plaintiff believes that a lodestar cross-check is unnecessary, courts in this District have found that "the actual fees incurred can provide a critical reference point for fee requests." *Hoffmaster v. Coating Place, Inc.*, No. 16-CV-258-WMC, 2017 WL 1968329, at *1 (W.D. Wis. May 11, 2017) (approving a fee request of 33%, accounting for both the percentage of the fund method and a lodestar cross check).

Here, lead counsel for Plaintiff includes attorneys J. Forester and Katherine Serrano, who have collectively spent nearly 100 hours of work litigating this case. J. Forester has most recently been approved at a rate of $740 per hour. *See* J. Forester Declaration. Katherine Serrano has most recently been approved at a rate of $350 per hour. *See* Katherine Serrano Declaration. Here, and based on the information below, this yields a supported lodestar.

| Name | Position | Rate | Hours | Lodestar |
|---|---|---|---|---|
| J. Forester | Attorney (Partner) | $740/hour | 46.5 | $34,410 |
| Katherine Serrano | Attorney | $350/hour | 50.5 | $17,675 |
| Total | | | | $52,085 |

Additionally, this time does not account for (1) the hours worked by support staff such as paralegals, law clerks, and intake personnel, or (2) any time yet to be incurred to issue notice,

complete final approval briefing, prepare for and appear for the final approval hearing, and to fully and finally administer the settlement.[13] Accounting for this additional time, which is expected to be in excess of 50 additional hours, and the time incurred to date, the attorneys' fees request herein is appropriate.

Overall, the time, effort, and resources put forth by Plaintiff's Counsel is well supported by the attorneys' fees request at issue here. Accordingly, the request by Plaintiff Counsel's is fair, reasonable, and customarily accepted by courts in this District.

### 7.   The Litigation Costs Requested are Appropriate.

In addition to a request of reasonable attorneys' fees, Class Counsel also seeks approval of actual case costs associated with litigating this matter. Courts in this District have approved the award of actual case costs associated with litigating a matter in addition to awarding attorneys' fees. *See Bitner*, 2017 WL 11674541, at *2 ("the court has no qualms in finding the request of a 33% attorneys' fee award plus actual costs as requested to be reasonable").

Here, the Parties have allotted an amount not to exceed $5,000 for actual case costs. These final costs will be submitted by Class Counsel via supporting declarations alongside the final approval briefing in anticipation of the final fairness hearing, should this matter be preliminarily approved at this point. The costs expended in litigating this matter, including a full-day mediation with an experienced mediator, is well supported by the request sought here. Accordingly, this request by Class Counsel is fair, reasonable, and customarily accepted by courts in the District.

### F.   Named Plaintiffs Deserve a Service Award

Service awards, also known as "incentive awards," "are justified when necessary to induce individuals to become named representatives." *In re Synthroid Mktg. Litig.,* 264 F.3d 712, 722

---

[13] Class Counsel will provide updated time accounts via the declarations in support of the final approval motion, following the distribution of notice to the class and in anticipation of the final approval hearing.

(7th Cir. 2001). *See also Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) ("[A] named plaintiff is an essential ingredient of any class action," therefore, "an incentive award is appropriate if it is necessary to induce an individual to participate in the suit."). To determine if an incentive award is warranted, a district court evaluates "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Id.*

The modest service awards sought for Mr. Allen should be approved because he substantially assisted counsel in achieving this settlement on behalf of the class, and his time and effort are deserving of a service award. *See* Katherine Serrano Declaration. He was responsible for initiating this action and provided guidance and assistance on numerous occasions to Plaintiff's counsel. Mr. Allen sought and retained experienced counsel, provided information necessary to prosecute the case including details surrounding his employment with Defendants and providing documents relating to his employment, and had numerous phone calls and email communications with counsel to discuss the case at bar, posit questions, and have continued involvement throughout the entire case to date. He also participated in the settlement process by providing additional insight in advance of mediation as well as his continued authority regarding the settlement reached by the Parties. Therein, Mr. Allen advocated for *all* of the delivery drivers. There is no question that the other delivery drivers have substantially benefited from his actions and advocacy on their behalf. Without his efforts, this case would not have been brought and this settlement would not have been achieved. In light of these efforts, payment of a service award in the amount reflected in the attached Settlement Agreement is amply justified.

As for the appropriate amount, district courts in this circuit have awarded incentive fee awards ranging from $5,000 to $25,000. *See Cook*, 142 F.3d at 1016 (affirming incentive award

of $25,000 where class representative spent hundreds of hours with attorney, providing them with an abundance of information, and reasonably feared workplace retaliation); *Redman v. RadioShack Corp.*, No. 11 C 6741, 2014 WL 497438, at *12 (N.D.Ill. Feb. 7, 2014) (awarding $5,000 to each class representative); *In re Sw. Airlines Voucher Litig.*, No. 11 C 8176, 2013 WL 4510197, at *11 (N.D.Ill. Aug. 26, 2013) (approving $15,000 award for two class representatives because of active participation in litigation); *Heekin v. Anthem, Inc.*, No. 1:05–cv–01908–TWP–TAB, 2012 WL 5878032, at *1 (S.D.Ind. Nov. 20, 2012) (awarding $25,000 each to two class representatives based on extensive involvement over seven years of litigation); *Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*, 212 F.R.D. 400, 412 (E.D.Wis.2002) (approving $5,000 awards where plaintiffs were "required to respond to discovery requests, produce documents, meet with counsel in preparation for their depositions and undergo depositions").[14]

Here, the incentive award sought for Mr. Allen is modest in comparison to incentive awards approved in other cases. Importantly, Mr. Allen signed a general release as additional consideration for a service award attached as an Exhibit to this motion, which is another reason to approve that award. *See, e.g., Slaughter v. Wells Fargo Advisors, LLC,* 2017 U.S. Dist. LEXIS 123535, *41 (N.D. Ill. Aug. 4, 2017). Further, Defendants do not oppose the requested service award. Given his efforts and the benefit provided to the class, Mr. Allen should be awarded a service award.

**G.    The Court Should Approve the Proposed Collective Action Class Notice**

To approve a class settlement, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). Here, the Notice

---

[14] *See, e.g., In re Ready-Mixed Concrete Antitrust Litig.*, 2010 U.S. Dist. LEXIS 30776, *35-36 (S.D. Ind. Mar. 30) (surveying incentive awards granted within the Seventh Circuit ranging from $5,000.00 to $100,000.00 and awarding the named plaintiff a $10,000.00 incentive award).

of settlement and the claim form will be mailed to class members by CAC.  Before mailing the Notice, CAC will run each class member through a change of address registry.  If the Notice is returned undeliverable, CAC will email that class member a copy of the notice.

The Notice explains in clear terms (1) the nature of the settlement and the claims released, (2) the minimum amount each class member has been allocated, and (3) the opportunity to include or exclude oneself or object to the settlement.  The Notice informs class members of the terms and provisions of the settlement agreement; the relief the settlement will provide; the need to submit a claim form in exchange for enhanced recovery; the scope of the releases; the date, time and place of the final approval hearing; and the procedures and deadlines for submitting comments or objections. Additionally, the proposed class notice advises class members of the amount of fees and costs that Plaintiff's counsel seek and the amount of the proposed service award to be paid to the Named Plaintiff who substantially aided in the prosecution of the case. The proposed class notice is accurate and fully informs class members of the material terms of the settlement and their rights pertaining to it. The Court should approve the proposed form and method of class notice of first-class mail to each class member's last-known address.

### IV.    Conclusion

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests that the Court grant this motion and issue an Order that:

(a)    grants Plaintiff leave to file an Amended Complaint alleging a class claim under Wisconsin state law;

(b)    certifies a class action for purposes of settlement only;

(c)    certifies an FLSA collective action for purposes of settlement only;

(d)    preliminarily finds that the Parties' settlement of the Wisconsin class claims

appears to be fair, reasonable, and adequate as to members of the class, subject to any objections that may be raised at the final fairness hearing and final approval of the class settlement by this Court;

(e)    finds that the Parties' settlement of the FLSA claim appears to be fair, reasonable, and adequate as to members of the collective action,

(f)    grants preliminary approval of the Wisconsin class action settlement;

(g)    grants approval of the FLSA collective action settlement;

(h)    approves as to form and content the Parties' proposed notice and claim form as reasonable notice practicable under the circumstances and in full compliance with applicable law;

(i)    orders that each class member be given a full opportunity to file a claim, object to, or opt out of the Settlement Agreement, and to participate at the final approval hearing;

(j)    schedules a final fairness hearing; and

(k)    awards such further relief as the Court deems equitable and just.


                    Respectfully submitted,

                    */s/ D. Matthew Haynie*
                    D. Matthew Haynie
                    J. Forester
                    **FORESTER HAYNIE PLLC**
                    400 N. St. Paul Street, Suite 700
                    Dallas, TX 75201
                    Phone: 214-210-2100
                    Fax: 214-346-5909
                    matthew@foresterhaynie.com
                    jay@foresterhaynie.com

                    **ATTORNEY FOR PLAINTIFF AND
                    THE PROPOSED CLASS**

                    -and-

                    */s/ Anthony D. Dick*

Anthony D. Dick (0084913)
**FISHER & PHILLIPS LLP**
200 Public Square, Suite 4000
Cleveland, OH 44114
Telephone: (440) 740-2110
tdick@fisherphillips.com
**ATTORNEY FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was electronically served on all counsel of record via the Court's ECF system.

*/s/ D. Matthew Haynie*
D. Matthew Haynie