## SETTLEMENT AND RELEASE AGREEMENT

Plaintiff, Daniel Allen, on behalf of himself and the Settlement Class defined below, on the one hand, and Defendants, Lanier, Inc. and Harold Michel Lanier[1] (collectively, "Defendants"), on the other hand, agree to a settlement, subject to Court approval as discussed below, through this Settlement and Release Agreement ("Settlement" or "Agreement"):

## I.
## DEFINITIONS

In addition to other terms defined in this Agreement, the terms below have the following meaning in this Agreement:

1.      "Action" or "Litigation" means the lawsuit entitled *Daniel Allen, individually and on behalf of similarly situated persons v. Lanier, Inc. and Michael H. Lanier*, Case No. 13:22-cv-00268-JDP, pending in the United States District Court for the Western District of Wisconsin.

2.      "Administration Fund" means an amount not to exceed Ten Thousand and 00/100 Dollars ($10,000.00), which shall be paid out of the Total Settlement Amount, to be used to pay the Administrator's fees and costs first, and then to pay Plaintiff's Court-approved advanced litigation costs.

4.      "Administrator" means the third-party claims administrator mutually agreed-upon by the Parties, and approved by the Court.

5.      "Authorized Claimant" means (1) a Participating Class Member who has returned a valid and timely Claim Form, or (2) a Participating Class Member who returns a valid Claim Form during the Reserve Fund Period ("Late Opt-In").

---

[1] Incorrectly identified in the Complaint as Michael H. Lanier.

6.      "Claim Form" means the approved claim form and consent to join, attached as an Exhibit hereto, that Settlement Class Members must complete, sign and timely return to receive a payment from the FLSA claim fund, as set forth below.

7.      "Class Counsel" means the law firm of Forester Haynie PLLC.

8.      "Class Representative" or "Plaintiff" means Daniel Allen.

9.      "Court" means the U.S. District Court for the Western District of Wisconsin.

10.     "Defendants" means Lanier, Inc. and Harold Michel Lanier.

11.     "Defendants' Counsel" means the law firm of Fisher & Phillips LLP.

12.     "Effective Date" means the day the Settlement is Final as defined below.

13.     "Exclusion Letter" means a letter that Settlement Class Members must complete, sign and timely return to exclude themselves from this Settlement, setting forth their name, address, email address, telephone number, the last four digits of their Social Security number, and a statement that they request exclusion from the Settlement Class and do not wish to participate in the Settlement and the Settlement Class Member's signature, which must be notarized.

14.     "Final" means that the Court has granted final approval of the Settlement without modification and either: (a) the applicable date for seeking appellate review of the Court's approval of the Settlement has passed without a timely appeal; (b) an appellate court has rendered a final decision or judgment affirming the Court's final approval of the Settlement without modification, and the time for any further appeal has expired; or (c) any timely appeal has been dismissed.

15.     "Final Fairness Hearing" means the hearing that the Court conducts to determine whether to finally approve and implement the Settlement. In no event shall the Final Fairness Hearing be scheduled earlier than ninety (90) calendar days after the Class Action Fairness Act

("CAFA") notices are served on the appropriate federal and state government officials as described below.

16.    "Net Settlement Fund" is the portion of the Total Settlement Amount used for calculating the amounts necessary to fund settlement class distributions as described herein, which amount shall not exceed Ninety-Three Thousand Eight Hundred Thirty-Three and 33/100 Dollars ($93,833.33).

17.    "Notice" means the approved notice to be mailed to Settlement Class Members, attached as an Exhibit hereto, which, following the Preliminary Approval of the Settlement, will be mailed to each Settlement Class Member explaining the Settlement terms and the claims process, as set forth herein.

18.    "Notice Period" means a fifty (50) calendar day period following the date Notice is mailed to Settlement Class Members.

19    "Participating Class Members" means Settlement Class Members who have not timely submitted a request to be excluded from the Settlement Class.

20.    "Parties" means Plaintiff, Daniel Allen, together with Defendants, Lanier, Inc. and Harold Michel Lanier, and "Party" means any of the Parties.

21.    "Preliminary Approval" means the date the Court enters an order preliminarily approving the settlement and authorizing the issuance of Notice to Settlement Class Members, as set forth herein.

22.    "Release Period" means July 23, 2019, through April 1, 2023.

23.    "Reserve Fund" means a fund designated for late claims and contingencies to be paid out of the Total Settlement Amount, which shall not exceed Ten Thousand and 00/100 Dollars ($10,000.00).

24.    "Reserve Fund Period" means the period beginning on the calendar day following close of the Notice Period through the expiration of the three-year statute of limitations under the Fair Labor Standards Act, which will be three years following April 1, 2023.

25.    "Settlement Class" or "Settlement Class Member(s)" means all delivery drivers who worked for Defendants during the Release Period at stores owned and operated by Defendant.

26.    "Total Settlement Amount" is the maximum amount Defendants will pay under this Agreement, which shall not exceed One Hundred Eighty-Two Thousand and 00/100 Dollars ($182,000.00).

## II.
## RECITALS

27.    On or about May 12, 2022, Class Counsel filed the Action alleging violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. ("FLSA"). Plaintiff alleged that he and other similarly situated pizza delivery drivers were not properly reimbursed for mileage expenses related to the business use of their personal vehicles.

28.    Prior to mediation, the Parties engaged in informal discovery, including exchanging production of data, including detailed class and collective damage calculations and settlement demands.

29.    On September 27, 2022, the Parties mediated before Allen Blair, Esquire, a neutral and experienced wage and hour class and collective action mediator. At the mediation, the Parties settled this putative class and collective action on the terms set forth within this Agreement, subject to Court approval.

## III.
## TERMS OF SETTLEMENT

30. <u>Condition Precedent</u>. The Settlement and the payments described herein are conditioned upon passing of the Effective Date.

31. <u>Amended Complaint</u>. Plaintiff shall file an Amended Complaint in advance of, or contemporaneously with, the motion for preliminary approval. The Amended Complaint shall include class action claims under the Wisconsin Minimum Wage Law applicable to delivery drivers who worked at stores operated by Defendant in Wisconsin as of July 23, 2019.  The Parties agree to dismissal with prejudice of the Action upon final approval of the Settlement by the Court.

32. <u>Total Settlement Amount</u>. Defendants' total aggregate payments under this Agreement shall under no circumstances exceed the Total Settlement Amount.

33. <u>Class Counsel's Attorneys' Fees, Costs, and Expenses</u>. Plaintiff and/or Class Counsel will request, and Defendants will not oppose, Court approval of a payment from the Total Settlement Amount for Class Counsel's attorneys' fees for all the work already performed and all the work remaining to be performed in an amount not to exceed Sixty Thousand Six Hundred Sixty-Six and 67/100 Dollars ($60,666.67), and a payment for Class Counsel costs not to exceed Five Thousand and 00/100 Dollars ($5,000.00). The Parties agree that any reduction by the Court of the amount of attorneys' fees, costs, and/or expenses requested by Class Counsel shall not be a basis for rendering the entire Settlement voidable or unenforceable.

34. <u>Service Payment to Class Representative</u>. Subject to the Court's approval, Plaintiff shall be paid a service payment in an amount not to exceed Two Thousand Five Hundred and 00/100 Dollars ($2,500.00), to be paid from the Total Settlement Amount, for his service as Class Representative, and in consideration for the Supplemental Settlement Agreement including a General Release of Claims as described below, in addition to any payments he may otherwise receive as an Authorized Claimant. Defendants will not contest Plaintiff's petition for such

payment. The service payment shall be treated as non-employee income, and the Class Representative shall be issued an IRS Form 1099 in the amount of her service payment. The Parties agree that any reduction by the Court of the amount of the Class Representative's requested service payment shall not be a basis for rendering the entire Settlement voidable or unenforceable. If the Court approves a service payment of less than the amount sought, the remainder will be added to the Net Settlement Fund.

35.    Settlement Administration Costs. All costs incurred in administering the Settlement (including retaining the Administrator who will handle the mailing of notices (including class notices and CAFA notices), forwarding of return notices, processing of claim forms, establishment of a Qualified Settlement Fund ("QSF"), mailing of the individual checks to Class Members, and follow-up reminder notices, as set forth herein) shall be paid from the Administration Fund, up to Ten Thousand and 00/100 Dollars ($10,000.00).

36.    Establishment of Settlement Funds. The Administrator shall establish a Net Settlement Fund not to exceed Ninety-Three Thousand Eight Hundred Thirty-Three and 33/100 Dollars ($93,833.33), to be paid out of the Total Settlement Amount, consisting of the following sub-funds to distribute settlement payments to Settlement Class Members:

(a)    FLSA Claim Fund: Settlement Class Members who submit a claim will receive their Potential Settlement Payment, which shall be at least Thirty and 00/100 Dollars ($30.00), based on their miles driven according to Defendants' records. Any checks unclaimed after one hundred eighty (180) calendar days will become stale. The total amount of stale checks, if any, will be deposited into the Wisconsin Department of Revenue's Unclaimed Property Fund. To the extent that the payments from the FLSA Claim Fund (i.e., the aggregate Potential Settlement Payments owed to Authorized Claimants) listed on the Final Payment List exceeds 40% of the Net

Settlement Fund (i.e., $39,533.33), Defendants have the right, in their sole discretion, to cancel the Agreement in its entirety and, if exercised, it shall be null and void, with the Parties returning to the *status quo ante* and maintaining all rights and arguments existing prior to the Agreement. Because they will not have joined the FLSA settlement, the pro rata share of individuals who do not opt-in to the collective will be retained by Defendants.

(b)    Minimum Payment Fund: Settlement Class Members who do not submit a claim, but do not exclude themselves (opt-out) from the Settlement, will receive a payment of Thirty and 00/100 Dollars ($30.00) to be paid out of the Minimum Payment Fund. Any checks unclaimed after one hundred eighty (180) calendar days will become stale.  The total amount of stale checks from the Minimum Payment Fund, if any, will be deposited into the Wisconsin Department of Revenue's Unclaimed Property Fund.

37.    <u>Distribution to Participating Class Members</u>. Within ten (10) calendar days after receipt of the Final Class Data List (as set forth below), the Administrator shall calculate each Settlement Class Member's potential share of the FLSA Claim Fund ("Potential Settlement Payment"), as follows:

(a)    The total number of his/her recorded miles making deliveries for Defendants during the Release Period shall be his/her "Individual Miles." The aggregate of all Individual Miles shall be the "Settlement Class Miles."

(b)    Each Settlement Class Member's Individual Miles shall be divided by the Settlement Class Miles to obtain his/her "Payment Ratio."

(c)    Each Settlement Class Member's Payment Ratio shall be multiplied by the Net Settlement Fund to arrive at his/her "Potential Settlement Payment."

(d)      Submission of Claim Forms: Only Authorized Claimants shall be paid out of the FLSA Claim Fund, except for Late Opt-Ins who shall be paid out of the Reserve Fund. To be timely, the Claim Forms must be submitted by the deadline indicated on the Notice and Claim Form by mail, e-mail, or fax (if mailed, bearing a postmark on or before the deadline), which date shall be not later than fifty (50) calendar days after the Notice is mailed ("Notice Period").  To be valid, Claim Forms must be signed, dated, and returned to the Administrator by the deadline as explained below. As the Class Representative will sign this Agreement, he does not need to sign, date, and return the Claim Form to demonstrate his consent to join the class action.

(e)      All other Settlement Class Members who do not timely submit a valid Claim Form, but who do not submit a request for exclusion (opt-out), shall receive a payment of Thirty and 00/100 Dollars ($30.00) from the Minimum Payment Fund, as described above.

(f)      Reserve Fund: In addition to the Net Settlement Fund, the Parties have negotiated a Reserve Fund to be available for Participating Class Members. The Reserve Fund shall not exceed Ten Thousand and 00/100 Dollars ($10,000.00) to be paid out of the Total Settlement Amount, to be held in QSF for Late Opt-Ins. Late Opt-Ins will receive their Potential Settlement Payment (reduced proportionally by the remaining time on the Late Opt-In's FLSA statute of limitations) less the payment previously received from the Minimum Payment Fund, unless such payments exceed the Reserve Fund, in which case Late Opt-Ins will receive a pro rata share of the remainder of the Reserve Fund at the time the claim is made. Any funds remaining after the Reserve Fund Period will be retained by Defendants.

(g)      Tax Allocation of Settlement Payments and Service Payment: One hundred percent (100%) of the settlement payments made to Participating Class Members will be treated as non-taxable payments in reimbursement for incurred expenses. No payroll or tax withholdings

8

will be taken from these payments. The Participating Class Members and the Class Representative will be responsible for correctly characterizing their respective settlement payments for tax purposes and paying any taxes owing on said amounts (including without limitation, any interest or penalties required by law). Any tax obligation(s) arising from the settlement payments and the Class Representative's Service Payments will be the sole responsibility of each Participating Class Member. Participating Class Members must indemnify, defend, and hold Defendants harmless for any federal, state, and local tax liability, including taxes, interest, penalties, or the like, and required withholdings, which may be or is asserted against or imposed upon Defendants by any taxing authority based upon any failure to pay any taxes due on the amounts being paid to the Participating Class Members pursuant to this Agreement; provided, however, that, without making any representation or warranty concerning the tax treatment of any sums to be paid under this Agreement, and provided that nothing herein is intended as, and shall not be construed as, any representation or admission by Defendants that any employer's share of income taxes shall be owed with respect to any such sums, the Parties acknowledge and agree that the indemnification obligations of the Participating Class Members hereunder shall not extend to any potential employer's share of employment taxes owed by Defendants, if any. None of the Released Parties nor any of their representatives have made any warranty concerning the tax treatment of any sums to be paid under this Agreement, and Participating Class Members have not relied on any such representation in determining the tax treatment of such sums. The Administrator will agree to manage all tax liabilities for all Parties and their Counsel as part of administration of the QSF.

(h)     None of the payments described in this Agreement shall be subject to matching contributions or included as benefits-eligible earnings under any benefit plan or policy of the Defendants or any of their current or former parent companies, subsidiaries, or affiliates.

Further, there shall be no recalculations of employee benefits or incentives based upon any amounts paid out to current or former employees as part of the Agreement.

(i)    None of the payments and/or distributions detailed in this Section shall be made until the dates specifically called for herein.

(j)    Within ten (10) calendar days after receipt of the funds for Participating Class Members, the Administrator shall mail the settlement payments to the Participating Class Members as described herein.

38.    <u>Conflict of Terms</u>. In the event of a conflict between the terms set forth in any communication (including, without limitation, the Notice and Claim Form) and this Agreement, the terms of this Agreement shall control.

## IV.
## SETTLEMENT PROCEDURES

39.    <u>Motion for Preliminary Approval</u>. Within ten (10) business days after the execution of this Agreement by all Parties, Plaintiff shall file a motion for preliminary approval of the Settlement (which shall not contain the monetary terms contained herein), applying to the Court for the entry of an Order that will be agreed upon by the Parties prior to submission:

(a)    Scheduling a fairness hearing on the question of whether the proposed Settlement should be approved as fair, reasonable, and adequate as to the Settlement Class;

(b)    Appointing Plaintiff as Class Representative and appointing Forester Haynie PLLC as Class Counsel;

(c)    Approving as to form and content the proposed Notice to the Settlement Class;

(d)    Approving as to form and content the proposed Claim Forms;

(e)    Approving the proposed method of requesting exclusion from the Settlement;

(f)    Directing the mailing of the Notice and Claim Forms by first-class mail to the Settlement Class Members;

(g)    Preliminarily approving the Settlement; and

(h)    Preliminarily certifying the Settlement Class and Collective for purposes of calculating Potential Settlement Payments, for purposes of settlement only.

40.    <u>CAFA Notices</u>. The Administrator shall send notice to the appropriate federal and state officials in accordance with CAFA within ten (10) calendar days after Plaintiff files the motion for preliminary approval of the Settlement. The Administrator shall be responsible for any and all other CAFA notices or obligations required by law with respect to this Agreement.

41.    <u>Non-Disclosure and Publicity</u>. The Parties agree that although they will file the Agreement publicly, the maximum confidentiality shall be afforded to the Agreement and the settlement terms. Prior to submission of the Agreement to the Court for final approval, the Parties and their counsel will keep the terms, conditions, and existence of the settlement and this Agreement strictly confidential, and will not contact, or comment to, the media about the settlement or this Agreement, or disclose, make known, discuss, or relay orally or in writing, electronically or otherwise, the existence or terms of the settlement or this Agreement, or any information concerning or discussions leading up to the settlement or this Agreement. After submission to the Court of the Motion for Approval, neither Plaintiff or Defendants, nor counsel to any Party, may make any public comment, make or have any communications to or with the press or media, or make any form of advertising or public announcement, utilize any form of social media or website, or issue any press release or media release, regarding the terms of this

Agreement, except that Counsel may state that a settlement has been reached. Notwithstanding the foregoing, the Parties shall have the right to disclose this Agreement as may be required under federal or state tax and/or securities laws or under generally accepted accounting principles and may disclose in legal proceedings a summary of the terms of this Agreement. Nothing in this paragraph prohibits Class Counsel from disclosing their representation in this matter in fee applications. Nothing in this Agreement shall prohibit Counsel for the Parties from disclosing information concerning this Agreement, to their employees, or their agents to effectuate the terms of this Agreement. Moreover, nothing in this Agreement shall prohibit Defendants from disclosing information concerning this Agreement to their employees or agents to the extent necessary to effectuate the terms of this Agreement or to other individuals who otherwise have a need to know the terms of this Agreement. The Parties may also disclose information concerning this Agreement to their respective counsel and tax, audit, and legal advisors. Nothing in this Agreement shall prevent Defendants or their Counsel from making any necessary, appropriate, or required disclosures to Defendants' regulators, auditors, bankers, and the like, or from complying with their obligations under the law. Class Counsel will promptly notify Defendants' Counsel of any third-party legal demand that they disclose information pertinent to the settlement or this Agreement.

42.    Notice to the Class.

(a)    Within seven (7) calendar days after Plaintiff files the motion for preliminary approval of the Settlement, Defendants will provide to the Administrator the names, store numbers, last known addresses, last known telephone numbers, and the last four digits of the social security numbers of the Settlement Class Members, along with data indicating the number of miles driven for each Settlement Class Member from the beginning of the applicable Release Period through April 1, 2023 ("Final Class Data List"). Defendants will provide Class Counsel a

copy of the Initial Class Data List that does not include the contact information or social security numbers of the Settlement Class Members. This data shall be based on Defendants' payroll and/or other business records and shall be used to prepare the CAFA notices.

(b)    Within fifteen (15) calendar days after the Court's Order granting Preliminary Approval, to the extent practicable, the Administrator shall consult the National Change of Address Registry, and mail to all Settlement Class Members, by first-class U.S. mail, the Notice and Claim Form, and a pre-addressed, postage-paid return envelope (collectively, "the Notice Packet").

(c)    If a Notice and Claim Form is returned as undeliverable, within ten (10) calendar days, the Administrator will send the Notice and Claim Form to that Settlement Class Member via email and text message provided the email and cell number is readily available in the Defendants' business records.

43.    <u>Claim Process</u>.

(a)    Settlement Class Members shall have fifty (50) calendar days after the initial mailing of the Notice Packets to return their Claim Forms to the Administrator ("Claims Period Deadline"). Claim Forms may be submitted to the Administrator via U.S. mail postmarked on or before the Claims Period Deadline, or sent by fax on or before the Claims Period Deadline, or sent by email on or before the Claims Period Deadline. In the case of mailed Claim Forms, the postmark date will be deemed the date of submission. In order for a Settlement Class Member to become an Authorized Claimant, he/she must verify his/her identity by providing accurately on the Claim Form the last four digits of his/her social security number. This entry shall be checked against the Final Class Data List.

(b)      If a Settlement Class Member submits a timely Claim Form that is rejected by the Administrator as deficient in some material respect (for example, the Settlement Class Member failed to sign the Claim Form or include the accurate last four digits of his/her social security number), the Administrator will notify the Settlement Class Member in writing of the basis for the deficiency and give the Settlement Class Member a reasonable opportunity to cure the deficiency, including a follow-up telephone call, if necessary. Class Counsel and/or the Administrator also will provide assistance to the Settlement Class Member if requested. Such Settlement Class Members shall have the greater of fifteen (15) calendar days after notification of the deficiency, or until the Claims Period Deadline, to cure the deficiency.

(c)      The Administrator shall provide the Parties with a weekly update of the number of claims received (including the number of valid and deficient claims), and any opt-outs and/or objections, and provide copies of any Claims Forms.

(d)      Within ten (10) calendar days of the Claims Period Deadline, the Administrator shall provide to the Parties any Claim Forms and opt-outs and/or objections not provided in accordance with subparagraph (c) above, along with a final list of all Participating Class Members and each Participating Class Member's settlement payment (hereinafter "Final Payment List"). The Parties shall agree on the Final Payment List.

(e)      If 5% or more of the Settlement Class Members submit a request for exclusion (opt-out), Defendants shall have the right, in their sole discretion, to cancel the Agreement in its entirety, and if exercised, the entire Agreement shall be null and void, with the Parties returning to the *status quo ante* and maintaining all rights and arguments existing prior to the Agreement. The Parties will not take any action to encourage any Settlement Class Members to opt out.

(f)    Within fifteen (15) calendar days of the Effective Date or agreement on the Final Payment List, whichever is later, Defendants shall wire to the QSF established by the Administrator an amount sufficient to pay all Class Members on the Final Payment List in the amount provided therein, the Reserve Fund, Class Counsel's approved attorneys' fees and costs, and the Class Representative's approved service payment.

(g)    Within ten (10) calendar days of receipt of the settlement funds in the QSF, the Administrator shall issue checks from the QSF to Class Counsel, Class Representative, and the Participating Class Members, as set forth herein.

(h)    Within fifteen (15) days of receipt of a valid Claim from a Late Opt-In during the Reserve Fund Period, the Administrator shall issue a check to the Late Opt-In, as set forth above; provided, however, that the claim is not barred by the Late Opt-In's FLSA statute of limitations at the time it is submitted to the Administrator.

(i)    Each Participating Class Member's settlement check shall include the following release language on the check stub and the back of the check:

> Whether you sign and cash or otherwise negotiate this check, or not, you have agreed to join in the lawsuit styled *Daniel Allen, individually and on behalf of similarly situated persons v. Lanier, Inc. and Michael H. Lanier*, Case No. 3:22-cv-00268-JDP (the "Action") and to release all wage and hour claims or causes of action you have against the Released Parties arising out of or relating to facts asserted in the Action.  This release includes claims arising under the Wisconsin Minimum Wage Law, or any similar state, municipal, or local laws, such as mileage reimbursement claims, minimum wage and overtime, off the clock claims, meal and rest break claims, and dual jobs claims.

(j)    Each Authorized Claimant's settlement check shall include the following release language on the check stub and the back of the check

> Whether you sign and cash or otherwise negotiate this check, or not, you have agreed to join in the lawsuit styled *Daniel Allen, individually and on behalf of similarly situated persons v. Lanier, Inc. and Michael H. Lanier*, Case No. 3:22-cv-00268-JDP (the "Action") and to release all wage and hour claims or causes of action you have against the Released Parties arising out of or relating to facts

15

asserted in the Action.  This release includes claims arising under the Fair Labor Standard Act, claims arising under the Wisconsin Minimum Wage Law, or any similar federal, state, municipal, or local laws, such as mileage reimbursement claims, minimum wage and overtime, off the clock claims, meal and rest break claims, and dual jobs claims.

44.    <u>Records and Disputes</u>. If a Participating Class Member wishes to dispute the calculation of his or her settlement payment, the Participating Class Member may so notify the Administrator or Class Counsel and should produce any supporting information and/or evidence available to the Participating Class Member. The Parties will meet and confer in an attempt to resolve any disputes and will endeavor to resolve the issue informally. Ultimately, unless the Participating Class Member produces data that would be admissible in Court contradicting the data provided to the Administrator, then the data produced by Defendants to the Administrator controls the settlement payment. If a person believes that he or she was wrongly excluded from being a member of the Settlement Class, the Parties will endeavor to resolve the issue informally with any additional and agreed upon amounts to come from the Reserve Fund.  The potential member of the settlement class will need to produce evidence that would be admissible in Court demonstrating they are, in fact, a proper member of the Settlement Class. If no such evidence is produced, then the class list created using Defendants records controls.

45.    <u>Objections to the Settlement</u>. Settlement Class Members who wish to object to the Settlement must not exclude themselves from the Settlement and must send to the Administrator and serve on Class Counsel and Defendants' counsel not later than fifty (50) calendar days after the date that the Administrator first mails the Notice Packets ("Objection Deadline"), a written statement objecting to the Settlement and setting forth the grounds for the objection, as explained further in the Notice. This statement also must indicate whether the Settlement Class Member intends to appear and object to the Settlement at the Final Fairness Hearing. The failure to so

indicate will constitute a waiver of the right to appear at the hearing. A Settlement Class Member who does not submit an objection in the manner and by the deadline specified above shall be deemed to have waived all objections and will be foreclosed from making any objection to the Settlement, whether by appeal or otherwise, absent a contrary order of the Court.

46.     Requests for Exclusion.

(a)     Settlement Class Members who wish to exclude themselves from the Settlement (opt out of the Settlement) must submit to the Administrator, not later than fifty (50) calendar days after the date that the Administrator first mails the Notice Packets ("Opt-Out Deadline"), an Exclusion Letter requesting that he or she be excluded from the Settlement Class. To be valid, the Exclusion Letter must provide the Class Member's name, address, email address, telephone number, the last four digits of their Social Security number, and a statement clearly indicating the Class Member's desire to opt-out of the settlement, and the Class Member's signature, which must be notarized. Exclusion Letters may be submitted to the Administrator via U.S. Mail or fax. A Settlement Class Member who does not submit a valid and timely Exclusion Letter in the manner and by the deadline specified above shall be bound by all terms and conditions of the Settlement, releases and by the Judgment, regardless of whether he or she submits a Claim Form. A Settlement Class Member who timely submits a valid Exclusion Letter shall not participate in, or be bound by, the Settlement or the Judgment in any respect. To be valid, Exclusion Letters must be submitted to the Administrator by the Opt-Out Deadline. Persons who submit an Exclusion Letter shall not be permitted to file objections to the Settlement or appear at the Final Fairness Hearing to voice any objections to the Settlement.

(b)     If a Settlement Class Member completes and submits both a Claim Form and an Exclusion Letter, the Administrator will contact the Settlement Class Member to obtain

clarification of the Settlement Class Member's intent. In the event that the Administrator is unable to obtain clarification of the Settlement Class Member's intent by the time of the Final Fairness Hearing, it will be presumed that the Claim Form is controlling, and such Settlement Class Member shall be treated as an Authorized Claimant, be paid a settlement payment pursuant to the Claim Form, and be bound by the terms of the Settlement. The Administrator will inform the Parties' Counsel of the name of any person who submits both a Claim Form and an Exclusion Letter. As necessary, the Court will be the final arbiter with respect to any disputes as to whether a person has filed a valid Claim Form, a valid Exclusion Letter, a valid objection to the Settlement, and/or a valid dispute as to the person's inclusion or exclusion as a Participating Class Member and/or Authorized Claimant.

(c)     Participating Class Members shall be bound by all of the terms of the Settlement, including without limitation, the release set forth in the Settlement.

47.     <u>Final Approval</u>.

(a)     At least ten (10) calendar days prior to the Final Fairness Hearing, Plaintiff will file with the Court a motion for final approval of the Settlement and a memorandum in support of his motion. Class Counsel will prepare the motion for final approval and will provide Defendants' Counsel sufficient opportunity to review and agree on the content of the motion before it is filed.

(b)     At the time the motion for final approval of the Settlement is filed, Class Counsel or the Administrator shall provide the Court a report specifying the due diligence that it has undertaken with regard to the mailing of the Notice; and reporting (to date) on the number of claims, objections, disputes (and status), and opt-outs submitted.

(c)     Not later than five (5) calendar days before the Final Fairness Hearing, the Parties may file, jointly or separately, a reply in support of their joint motion for final approval of the Settlement, in the event any opposition to the joint motion for final approval has been filed. Likewise, Class Counsel may file a reply in support of the motion for approval of Class Counsel's attorney's fees and costs, in the event any opposition to the motion for such attorneys' fees and/or costs has been filed.

(d)     At or before the Final Fairness Hearing, the Parties will present a proposed Order Granting Final Settlement Approval for the Court's entry, as explained below.

(e)     Upon the filing of the motion for final approval of the Settlement, the Parties will submit a proposed Order Granting Final Settlement Approval in a mutually agreeable form:

- Approving the Settlement, adjudging the terms thereof to be fair, reasonable, and adequate, and directing consummation of its terms and provisions;

- Approving Class Counsel's motion for attorneys' fees and expenses;

- Approving the Class Representative's service payments;

- Permanently enjoining the Class Representative and all Settlement Class Members (other than those who filed timely and valid Exclusion Letters) from prosecuting against the Released Parties (defined below) any and all of the Participating Class Members' Released Claims (defined below);

- Finally certifying the Settlement Class and Collective for purposes of calculating Potential Settlement Payments, for purposes of settlement only; and

- Dismissing the Action with prejudice.

48.    <u>Returned Checks</u>. If a settlement payment check envelope is returned as undeliverable, the Administrator will use its discretion to take all steps necessary to locate an updated mailing address for that Settlement Class Member, including without limitation, enhanced skip tracing methods, calling and/or emailing the Settlement Class Member using the telephone number and/or email address provided in the Final Class Data List or in his or her returned Claim Form. If the Administrator is able to obtain an updated address, the Administrator will forward payment to the updated address.

49.    <u>Uncashed Checks</u>.    If Class Member has not cashed his or her Individual Settlement Payment check within one-hundred eighty (180) calendar days after issuance, such check will become stale.  The total amount of stale checks, if any, will be deposited into the Wisconsin Department of Revenue's Unclaimed Property Fund.

## V.
## <u>RELEASE OF CLAIMS</u>

50.    <u>Authorized Claimants' Released Claims</u>. Upon the Effective Date of the Settlement, the Class Representative and all Authorized Claimants will release and forever discharge Defendants and each of their former and present predecessors, successors, parents, subsidiaries, franchisors, insurers, and affiliates, whatever their current or former legal names or legal entity status, and each of their respective current and former owners, officers, directors, employees, partners, shareholders, and agents, and any other successors, assigns, or legal representatives ("Released Parties"), from any and all wage and hour claims, rights, demands, liabilities, and causes of action of every nature and description, whether known or unknown, for the Release Period.  This release includes claims arising out of, based on, or encompassed by facts asserted in the action, arising under the FLSA, the Wisonsin Minimum Wage Law, or any similar federal, state, municipal, or local laws, such as mileage reimbursement claims; minimum wage

and overtime; off the clock claims; meal and rest break claims; and dual jobs claims. Without limiting the generality of the foregoing, the claim preclusion effect of this Settlement, and the judgment thereon, for res judicata purposes shall be co-extensive with this release of claims (collectively, the "Authorized Claimants' Released Claims").

51.    <u>Participating Class Members' Released Claims</u>: Upon the Effective Date of the Settlement, all Participating Settlement Class Members, regardless of whether they cash or otherwise negotiate their settlement check, will release and forever discharge the Released Parties from any and all wage and hour claims, rights, demands, liabilities, and causes of action of every nature and description, whether known or unknown, for the Release Period.  This release includes claims arising out of, based on, or encompassed by facts asserted in the action, arising under the Wisconsin Minimum Wage Law, or any similar state, municipal, or local laws, such as mileage reimbursement claims; minimum wage and overtime; off the clock claims; meal and rest break claims; and dual jobs claims. Without limiting the generality of the foregoing, the claim preclusion effect of this Settlement, and the judgment thereon, for res judicata purposes shall be co-extensive with this release of claims (collectively, the "Participating Class Members' Released Claims").

52.    <u>Release of Fees and Costs</u>: Plaintiff, on behalf of himself and the Settlement Class Members, hereby irrevocably and unconditionally releases, acquits, and forever discharges any claim that he has or may have against Defendants for attorneys' fees, costs, or expenses associated with this Litigation, including but not limited to those attorneys' fees, costs, or expenses associated with Class Counsel's representation of the Plaintiff and Settlement Class Members in this Litigation. Plaintiff further understands and agrees that any fees and costs payment provided for herein will be the full, final, and complete payment of all attorneys' fees, costs, and expenses

associated with Class Counsel's representation of Plaintiff and the Settlement Class Members in this Litigation.

53.    <u>General Release by Class Representative</u>.

(a)    In exchange for the service payment described herein, the Class Representative agrees to sign a Supplemental Settlement Agreement containing a General Release of claims in the form attached as an Exhibit hereto.

(b)    The Parties agree that any refusal by the Court to approve of the General Release by the Class Representative as set forth in this paragraph shall not be a basis for rendering the entire Settlement voidable or unenforceable. The Parties further agree that the service payment is contingent upon the execution of the Supplemental Settlement Agreement and General Release.

**VI.**
**ADDITIONAL PROVISIONS**

54.    <u>No Waiver of Arbitration Agreements</u>. The Parties and Participating Class Members agree that, by entering into and seeking Court approval of this Agreement, Defendants in no way waive any rights to enforce arbitration agreements entered into between Defendants and Participating Class Members, including the waiver of class and collective action litigation, or to enforce similar agreements with other employees.

55.    <u>Signatories</u>.

(a)    The respective signatories to the Settlement represent that he, she, or they are fully authorized to enter into this Settlement and bind to its terms and conditions the respective entities for which the person is signing as shown on the signature line.

(b)    The Parties agree that because the Settlement Class Members are so numerous, it is impossible or impractical to have each Settlement Class Member execute this Settlement. The Notice will advise all Settlement Class Members of the binding nature of the

release. Excepting only the Settlement Class Members who submit a valid and timely Exclusion Letter, this Agreement shall have the same force and effect as if it were executed by each Settlement Class Member.

56.     <u>Cooperation to Implement Settlement</u>. The Parties agree to cooperate fully with each other to accomplish the terms of this Settlement, including but not limited to executing such documents and taking such other actions as may reasonably be necessary to implement the terms of the Settlement. The Parties shall use their best efforts, including all efforts contemplated by this Settlement and any other efforts that may become necessary by order of the Court, or otherwise, to effectuate the terms of the Settlement.

57.     <u>No Prior Assignments</u>. The Parties represent, covenant, and warrant that they have not directly or indirectly assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action, or right released and discharged in this Settlement.

58.     <u>No Admission of Liability and Inadmissibility of Settlement</u>:

(a)     Defendants deny liability to Plaintiff and the Settlement Class for any claim or cause of action. Defendants have denied and continue to deny each of the claims and contentions alleged by Plaintiff in the Litigation. Defendants have repeatedly asserted and continue to assert defenses thereto and have expressly denied and continue to deny any wrongdoing or legal liability arising out of any of the facts or conduct alleged in the Litigation. Defendants also have denied and continue to deny the allegations that the Settlement Class Members have suffered damage or that the Settlement Class Members were harmed by the conduct alleged in the Litigation. By entering into this Agreement, Defendants in no way admit to the alleged liability or the suitability of the Action for class or collective action litigation other than for purposes of settlement.

(b)    Settlement of the Litigation and all acts performed or documents executed in furtherance of this Agreement or the settlement embodied herein: (i) are not, shall not be deemed to be, and may not be used as an admission or evidence of any wrongdoing or liability on the part of Defendants, or of the truth of any of the factual allegations in the Complaints filed in the Litigation; (ii) are not, shall not be deemed to be, and may not be used as an admission or evidence of fault or omission on the part of Defendants in any civil, criminal, administrative, or arbitral proceeding; and (iii) are not, shall not be deemed to be, and may not be used as an admission or evidence of the appropriateness of these or similar claims for class or collective action treatment other than for purposes of administering this Agreement. The Parties understand and agree that this Agreement and any exhibit hereto are settlement documents and shall be inadmissible in any proceeding for any reason, except a proceeding to enforce the terms of this Agreement.

59.    Fair, Adequate, and Reasonable Settlement. The Parties agree that the Settlement is fair, adequate, and reasonable, and will so represent it to the Court; provided, however, that nothing herein is intended to, and shall not be construed to, waive the confidentiality of the Parties' settlement or settlement negotiations and discussions pursuant to the Federal Rules of Evidence.

60.    Waiver of Appeals. The Parties agree to waive all appeals from the Court's final approval of this Settlement, unless the Court materially modifies the Settlement; provided, however, that Plaintiff may appeal any reduction in the amount of Class Counsel's fees and expenses and/or the service payment to the Class Representative. Any reduction in the amount of Class Counsel's fees, Class Counsel's expenses, and/or the service payments to the Class Representative will not, however, constitute a material modification of the Settlement and will not be grounds to void the Settlement.

61. <u>No Tax Advice</u>. Neither Class Counsel nor Defendants' Counsel intend anything contained in this Settlement to constitute advice regarding taxes or taxability, nor shall anything in this Settlement be relied upon as such within the meaning of United States Treasury Department Circular 230 (31 CFR Part 10, as amended) or otherwise.

62. <u>Collective and Class Action Certification and Settlement Approval</u>.

(a)    In connection with the request for Preliminary Approval of the Settlement, Plaintiff shall seek an order certifying the Settlement Class for settlement purposes only under the FLSA and the Wisconsin Minimum Wage Law. Defendants are consenting to the certification of the Settlement Class for settlement purposes only and contend that class and collective certification would not be appropriate if the matter were litigated.

(b)    In the event: (i) the Court does not enter the Order specified herein; (ii) the Court does not finally approve the Settlement as provided herein; (iii) the Court does not enter a Final Judgment as provided herein, which becomes final as a result of the occurrence of the Effective Date; or (iv) the Settlement does not become Final for any other reason, this Agreement shall be null and void, and any order or judgment entered by the Court in furtherance of this Settlement shall be treated as void from the beginning. In such a case, any certified class shall be decertified, the Parties shall be returned to their respective statuses as of the date and time immediately prior to the execution of this Agreement, and the Parties shall proceed in all respects as if this Agreement had not been executed. In such case, the Settlement shall not be used or be admissible in any subsequent proceedings, either in the Litigation or in any other court or forum. In the event an appeal is filed from the Court's Final Judgment, or any other appellate review is sought prior to the Effective Date, administration of the Settlement shall be stayed pending final resolution of the appeal or other appellate review.

63.    <u>Use of Confidential Documents and Information</u>. Plaintiff and Class Counsel agree to keep confidential all documents and information produced in the course of discovery or proceedings of the Litigation, and Plaintiff agrees to return any such documents to Class Counsel. All documents and information produced in discovery in the Litigation, otherwise obtained in the course of the proceedings of the Litigation, as well as all documents and information (including Settlement Class Member contact information) produced in connection with effectuation of this Settlement, shall only be used for purposes directly related to the effectuation of this Settlement.

64.    <u>Cooperation in Drafting</u>. The Parties agree that the terms and conditions of this Settlement are the result of lengthy, intensive, arm's-length negotiations between the Parties, and that this Settlement shall not be construed in favor of or against any Party by reason of the extent to which any Party, his, her, its, or their counsel participated in its drafting.

65.    <u>Applicable Law</u>. All terms and conditions of this Agreement and its exhibits, if any, will be governed by and interpreted according to the laws of the State of Wisconsin, without giving effect to any conflict of law principles or choice of law principles.

66.    <u>Captions and Headings</u>. Captions, headings, or paragraph titles in this Settlement are a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Settlement or any provision.

67.    <u>Modification</u>. This Settlement may not be changed, altered, or modified, except in writing, and signed by the Parties, and approved by the Court. This Settlement may not be discharged except by performance in accordance with its terms or by a writing signed by the Parties.

68.    <u>Integration Clause</u>. This Settlement contains the entire agreement between the Parties relating to the resolution of the Litigation. All prior or contemporaneous agreements,

understandings, representations, and statements, whether oral or written and whether by a Party or such Party's legal counsel, are merged in this Agreement. No rights under this Agreement may be waived except in writing.

69.    Binding on Assigns. This Settlement may be binding upon and inure to the benefit of the Parties and their respective heirs, trustees, executors, administrators, successors, and assigns.

70.    Counterparts: This Agreement shall be executed in counterparts by electronic mail or facsimile, and when each Party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and when taken together with other signed counterparts, shall constitute one Settlement, which shall be binding upon and effective as to all Parties.

71.    Interim Stay of Proceedings in Action. Parties agree to hold in abeyance all proceedings in the Action, except such proceedings necessary or appropriate to implement and complete the Settlement, pending the Final Fairness Hearing.

72.    Enforceability. When this Agreement is signed by all Parties and their attorneys of record, it shall be fully enforceable by the court pursuant to any applicable provision of law.

**WE AGREE:**

Date:  4-20-23

_____
Lanier, Inc.

By its:  president

Date:  4-20-23

_____
Harold Michel Lanier

Date:  _____

_____
Daniel Allen

understandings, representations, and statements, whether oral or written and whether by a Party or such Party's legal counsel, are merged in this Agreement. No rights under this Agreement may be waived except in writing.

69.    <u>Binding on Assigns</u>. This Settlement may be binding upon and inure to the benefit of the Parties and their respective heirs, trustees, executors, administrators, successors, and assigns.

70.    <u>Counterparts</u>: This Agreement shall be executed in counterparts by electronic mail or facsimile, and when each Party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and when taken together with other signed counterparts, shall constitute one Settlement, which shall be binding upon and effective as to all Parties.

71.    <u>Interim Stay of Proceedings in Action</u>. Parties agree to hold in abeyance all proceedings in the Action, except such proceedings necessary or appropriate to implement and complete the Settlement, pending the Final Fairness Hearing.

72.    <u>Enforceability</u>. When this Agreement is signed by all Parties and their attorneys of record, it shall be fully enforceable by the court pursuant to any applicable provision of law.

**WE AGREE:**

Date: _____    _____

Lanier, Inc.

By its: _____


Date: _____    _____

Harold Michel Lanier


Date: _May 1, 2023_____    _____

Daniel Allen (May 1, 2023 14:21 EDT)

Daniel Allen

27

## SUPPLEMENTAL SETTLEMENT AGREEMENT AND RELEASE

This Supplemental Settlement Agreement and Release (the "Agreement") is entered into by and between Plaintiff Daniel Allen ("Allen"), on the one hand, and Lanier, Inc. and David M. Harold Michel Lanier[1] ("Defendants"),[2] on the other.

1. **Purpose.** This Supplemental Settlement Agreement and Release supplements and incorporates the Settlement and Release Agreement to be executed by the Parties. The purpose of this Agreement is to fully and conclusively resolve and settle all matters and claims Allen could assert against Defendants and the Released Parties, including, but not limited to, any claims for relief that were made or could have been made by Allen in the matter of *Daniel Allen, individually and on behalf of similarly situated persons v. Lanier, Inc. and Michael H. Lanier*, Case No. 3-22-cv-00268, currently pending in the United States District Court for the Western District of Wisconsin (the "Litigation"). It is a further and equal purpose of this Agreement to resolve any and all disputes, controversies, or claims that Allen may have against Defendants and the Released Parties, which arise out of facts or circumstances occurring in whole or in part on or before the effective date of this Agreement, whether facts regarding any such claims are presently known or unknown, and regardless of whether same may be claimed to exist under current or future laws or interpretation of law.

2. **Opportunity to Negotiate, Consider and Consult with Counsel.** The terms of this Agreement are the product of negotiations between the Parties hereto, and the Parties stipulate that the consideration given to support the obligations of this Agreement is the full consideration agreed to, and that neither has received any other promises, inducements, or concessions in support of the duties imposed. In executing this Agreement, Allen has not relied on any representation, compromise, conduct or action made by or on behalf of Defendants or Defendants' attorneys. Allen acknowledges that he has obtained the advice of competent counsel regarding this Agreement and agrees that he has been given a reasonable period of time within which to consider this Agreement. Allen and Defendants confirm that they have had this Agreement explained to them by their respective attorneys, they are relying on their own judgment and on the advice of their respective attorneys in executing this Agreement, and each confirms their competence to understand and does hereby accept the terms and conditions of the Agreement.

3. **No Admission of Liability.** The Parties stipulate and agree that entry into this Agreement does not constitute, for any purpose whatsoever, either directly or indirectly, an admission of any liability, wrongdoing or unlawful conduct whatsoever, whether by omission or commission, by or on the part of any Party, and that Defendants expressly deny any such liability and conduct.

4. **Consideration.** The consideration given to Allen under this Agreement and the Settlement and Release Agreement consists of payment to Allen in the amount of Two Thousand Five Hundred Dollars and 0/100 ($2,500.00), or such amount as is awarded by the Court, identified as Allen's Service Payment in the Settlement and Release Agreement, plus Allen's proportionate

---

[1] In the Complaint, Harold Michel Lanier is misidentified as Michael H. Lanier.

[2] The defined terms included in the Settlement and Release Agreement executed by the Parties are incorporated by reference herein.

FP 45378006.1
FP 45716692.1

share of the applicable settlement funds as set forth in the Settlement and Release Agreement. IRS Forms 1099 will be issued to the claimant and his counsel in accordance with IRS regulations. The consideration given by Allen to Defendants in support of this Agreement consists of full performance of each and every one of the respective obligations described in this document.

5.      **Release of Defendants and Released Parties.** For and in consideration of the required acts and promises set forth in the text of this Agreement, Allen, for himself and his heirs, assigns, executors, administrators, agents, successors in interest, and legal representatives, hereby knowingly and voluntarily releases and forever discharge Defendants, and Released Parties from any and all claims, demands, causes of action, complaints, rights, actions, remedies, suits, or charges, known or unknown, asserted or unasserted, of any kind or character, in tort, in contract, or under any other law or statute whatsoever, accrued to date, which Allen has or might have as a result of, or in any way connected with Allen's employment with Defendants, including but not limited to claims under the Fair Labor Standards Act, Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1866 and 1871, the Americans With Disabilities Act, the Employee Retirement Income Security Act of 1974, as amended, The Consolidated Omnibus Budget Reconciliation Act of 1985, as amended ("COBRA"), the Family and Medical Leave Act, the Pregnancy Discrimination Act, the Equal Pay Act of 1973, the Rehabilitation Act of 1973, the Occupational Safety and Health Act, the Immigration Reform and Control Act, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Worker Adjustment and Retraining Notification Act of 1988, the National Labor Relations Act, the Constitutions of the United States and Wisconsin, the Wisconsin Fair Employment Act, the Wisconsin Wage Payment and Collection Law, the Wisconsin Business Closing and Mass Layoff Law, the Wisconsin Family and Medical Leave Law, Wisconsin Personnel Records Statute, the Wisconsin Employment Peace Act, Wisconsin Cessation of Heath Care Benefits Law, and all other local, state or federal laws including but not limited to those relating to discrimination, harassment, retaliation, denial or termination of any health benefit or benefits of any other kind, or any claims of breach or violation of public policy, any claims arising under the Federal or any state constitution, wrongful or constructive discharge, retaliatory discharge, breach of contract, any and all claims or rights under federal, state or local laws, regulations or ordinances relating to the payment of wages, bonuses, overtime, vacation pay, expense reimbursement, incentives, and/or other compensation to employees (including under the Fair Labor Standards Act 29 U.S.C. § 201, *et seq.*), severance pay claims, promissory estoppel, fraud, fraudulent misrepresentation or concealment, retaliation, breach of the covenant of good faith and fair dealing, intentional and/or negligent infliction of emotional distress, outrageous conduct, interference with prospective business advantage, negligence, negligent misrepresentation or concealment, wrongful or bad faith termination, defamation and other business or personal injury, or any other claims or rights to damages, whether contractual, liquidated, compensatory, exemplary, or punitive, or rights to or claims for injunctive or equitable relief, or rights to or claims for expenses, costs, fees, attorneys' fees, and all losses of any kind whatsoever, accrued to date, which Allen has or might have by virtue of any fact(s), act(s) or event(s) occurring prior to the effective date of this Agreement, to the extent permitted by law. By signing this Agreement, Allen promises, covenants and agrees, to the fullest extent permitted by law, that he will never commence, prosecute or cause to be commenced or prosecuted, any action or other proceeding based upon any claims, demands, causes of actions, obligations, damages or liabilities which are released by this Agreement. Allen acknowledges and agrees that, except as expressly limited in this release, this Agreement releases and precludes any claims of which he is not now aware and of which he may

only become aware at some later date. Nevertheless, Allen fully and freely intends to and does, by executing this Agreement, release any such claims. Notwithstanding the above, nothing in this release is intended to release or waive (a) rights to any claim or right which cannot be waived by law, including all claims arising after the effective date of this Agreement; (b) the right to file a charge with or participate in an investigation conducted by an administrative agency; (c) the right to enforce this Agreement; (d) any right to COBRA benefits, unemployment insurance benefits, or vested retirement benefits; (d) or any existing rights of defense and indemnity or liability insurance coverage.

6.    **No Re-Employment.**  Allen understands, acknowledges and agrees that he will not seek re-employment with or by Defendants or Released Parties unless he first repays all money, including service awards, received pursuant to the Settlement and Release Agreement.  Subject to such repaying option, Allen expressly waives and disclaims any right to reinstatement or reemployment with or by Defendants, and promises and agrees never to seek employment or reinstatement with or by Defendants or Released Parties at any time in the future.  Allen agrees and acknowledges that his signature on this Agreement is grounds for immediate rejection of any application for employment or reinstatement submitted by him.

7.    **Acknowledgment of Receipt of All Payment Owed.**  Allen agrees and acknowledges that he has received all salary, wages, commissions, Paid Time Off (PTO), overtime payments, reimbursements, liquidated damages and employee benefits to which Allen was and/or is entitled as a result of Allen's employment with Defendants, and specifically waives, releases and discharges any right or entitlement he may have to any further compensation or other payments from Defendants, except as set forth in this Agreement.

8.    **Non-Disparagement.** Allen agrees that he will neither say, write nor communicate in any manner to any person or entity anything derogatory or disparaging about Defendants, regardless of the truth or falsity of the information, except that nothing in this provision shall prevent Allen from making any truthful statement in connection with any legal proceeding or any investigation by any governmental authority. A disparaging statement is any communication, oral or written, which would cause or tend to cause humiliation or embarrassment or to cause a recipient to question the business condition, integrity, product and service, quality, confidence or good character of Defendants, the Released Parties, or the Defendants' products and services.

9.    **Attorneys' Fees.** Subject only to the application for attorneys' fees as set forth in the Settlement and Release Agreement in connection with the Litigation, Allen expressly acknowledges and agrees that he alone is responsible and liable for paying any and all attorneys' fees and related costs and disbursements he has incurred in connection with (a) his employment relationship with Defendants, (b) the claims he has asserted or alleged or could have asserted or alleged against Defendants, and (c) the negotiation and drafting of this Agreement, and that Defendants have no responsibility or obligation whatsoever to pay any attorneys' fees, costs or disbursements.

10.    **Medicare Reporting Requirements.** The Parties have considered Medicare's interest in this matter, if any, and Allen declares and expressly warrants that he is not Medicare eligible nor within thirty (30) months of becoming Medicare eligible; is not 65 years of age or older; is not suffering

from end stage renal failure; has not received Social Security benefits for 24 months or longer; and has not applied for Social Security disability benefits, and/or has not been denied Social Security disability benefits and appealing the denial; and therefore, no Medicare Set Aside Allocation is being established. Allen attests that the claims released herein are not related to any illness or injury for which Allen would apply or receive Medicare benefits. Allen understands that he is required by law to disclose this information to Defendants and their attorneys in connection with this Agreement. Allen understands that failure to do so may result in penalties being assessed against Allen, the Parties, and attorneys. Allen declares and warrants that he is aware of the requirements of the Medicare Secondary Payer Act ("MSP"), and Allen understands that Medicare has an interest in recovering any benefits paid when it is used as a source of secondary payment. Allen therefore agrees to release, hold harmless, and indemnify Defendants from any remedies, reprisals, or penalties that result from Allen's failure to disclose or release Allen's status as a Medicare beneficiary. In the event that any of the above information provided by Allen is false or in any way incorrect, Allen shall be solely liable for any and all actions, causes of actions, penalties, claims, costs, services, compensation or the like resulting from these inaccuracies. Allen acknowledges that Medicare may require him to exhaust the payment in Paragraph 4 on Medicare covered expenses should he become Medicare eligible within thirty (30) months. Allen waives any claims for damages, including a private cause of action provided in the MSP, 42 U.S.C. Section 1395(b)(3)(A), should Medicare deny coverage for any reason, including the failure to establish a set aside allocation to protect Medicare's interest.

11.    **Confidentiality.**  Allen agrees and understands that this Agreement, the contents and subject matter relating to or pertaining to this Agreement, and the consideration for this Agreement are strictly confidential, and shall not be discussed, referred to or communicated to third parties or any other person or entity, or in any way publicized, disclosed, distributed, discussed, or disseminated in any media format of any kind.  For example, Allen agrees not to:  issue a press release or otherwise notify the media about the terms of this Agreement; disclose the terms of this Agreement through electronic or print advertising, including but not limited to disclosure on any blog, social networking site, website, or other Internet site; and/or otherwise discuss or disclose any of the terms of this Agreement through verbal, written, recorded or electronic communications.  To the extent Allen is contacted regarding the terms of this Agreement, he agrees to limit any comments to the statement, "The matter is resolved."  Allen agrees to instruct his attorneys to abide by the provision of this section as well. Nothing contained herein shall prevent Allen from disclosing the amounts paid under this Agreement to: (1) his spouse, attorneys, bank, and accountant or tax advisors, provided that each such person has been informed of this confidentiality obligation and has agreed to be bound by its terms, or (2) the IRS or state or local taxing authorities.  Nothing in this Agreement shall prohibit Allen from disclosing information protected by this paragraph to the extent it is sought by a lawful subpoena or pursuant to other valid agency or court action, or in any action to enforce the terms of this Agreement, provided that notice is provided to all Parties of any lawful subpoena or valid agency or Court request.

12.    **Knowing and Voluntary Agreement.** The Parties to this Agreement acknowledge and agree that each of them has had a full opportunity to carefully review the terms and provisions of this Agreement and to review the Agreement with their own attorney, that to the extent they wanted to talk to an attorney about this Agreement they have availed themselves of that right, and that each of them enters into this Agreement after appropriate investigation and consideration of the meaning and effect of the terms of this Agreement and without reliance upon any representation of any other

Party to this Agreement other than those specifically set out herein and that they understand this Agreement constitutes a final and complete release of all claims against the Party released, regardless of their kind or character, including any possible claim which might be discovered in the future. By executing this Agreement, all the Parties represent and agree that they have carefully read and fully understand all the provisions of this Agreement, and that they are knowingly and voluntarily entering into this Agreement.

**13.**    **Remedies upon Breach.** The Parties acknowledge and agree that, in the event of a breach of any of the terms or provisions of this Agreement, nothing in this Agreement shall be construed to preclude or limit any Party from asserting claims or filing a lawsuit for the purpose of: (a) recovering moneys paid under this Agreement; (b) enforcing rights under this Agreement; or (c) pursuing any other rights and remedies available under law, including equitable relief, injunctive relief, and damages.

**14.**    **Interpretation of Agreement.** The Parties to this Agreement acknowledge and agree that: (a) this Agreement and its reduction to final written form are the result of good faith negotiations between the Parties through their respective counsel; (b) said counsel have carefully reviewed and examined this Agreement before execution by said Parties, or any of them; and (c) any statute or rule of construction that ambiguities are to be resolved against the drafting Party shall not be employed in the interpretation of this Agreement.

**15.**    **Assignability and Binding Effect.** This Agreement, and all the provisions contained herein, shall inure to the benefit of and shall be binding upon the heirs, executors, administrators, successors and legal representatives of Allen, and shall inure to the benefit of and be binding upon Defendants, Released Parties, and their respective successors and assigns. This Agreement may be transferred or assigned by Defendants. The obligations of Allen under this Agreement may not be delegated and Allen may not assign, transfer, or otherwise convey or dispose of this Agreement, or any of its rights hereunder, and any such attempted delegation, assignment or disposition by Allen shall be null, void, and without effect.

**16.**    **No Changes to Agreement.** No modifications or amendments to any of the terms, conditions, or provisions of this Agreement and the incorporated Settlement and Release Agreement may be made except by a written agreement executed by all Parties hereto.

**17.**    **Representations Regarding Claims.**

      **a.**    Allen represents that he is not aware of any claims against Defendants other than those asserted in the Litigation and acknowledges that he has had the opportunity to discuss this matter with counsel of his choice, including Forester Haynie PLLC.

      **b.**    Allen represents and warrants that Allen has not sold, assigned, transferred, conveyed or otherwise disposed of to any third party, by operation of law or otherwise, any action, cause of action, debt, obligation, contract, agreement, covenant, guarantee, judgment, damage, claim, counterclaim, liability, or demand of any nature whatsoever, relating to any matter covered by this Agreement.

FP 45378006.1
FP 45716692.1

18.    **Multiple Originals.** This Agreement is executed in multiple counterparts, each of which shall be deemed an original, but all of which together shall constitute one instrument. Electronic or fax revisions shall be deemed originals.

Date: _11/31/2022_

_Lanier Inc._

By its: _Vice president_

Date: _11/31/2022_

_Harold Michel Lanier_

Date: Nov 28, 2022

_Daniel Allen_

FP 45378006.1