IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DANIEL ALLEN,

                             Plaintiff,

   v.                                                     OPINION and ORDER

LANIER, INC. and MICHAEL H. LANIER,                  22-cv-268-jdp

                           Defendants.

---

This is a proposed class and collective action about the proper method of reimbursing delivery drivers for vehicle-related expenses, such as gas and repairs. Plaintiff Daniel Allen delivered pizzas for defendants Lanier, Inc. and Michael H. Lanier, who operate Domino's Pizza restaurants in Wisconsin. Allen contends that defendants' reimbursement rate of $1.50 per delivery was so low that it deprived Allen of the minimum wage required under the Fair Labor Standards Act and Wisconsin wage law.

The parties previously moved to certify a federal collective and a state class and to preliminarily approve their proposed settlement. Dkt. 9. The court denied the motion without prejudice and directed the parties to address several concerns. Dkt. 13. The parties now renew their motion. Dkt. 14. The court is persuaded that certification and preliminary approval is appropriate and the court will also approve the proposed class notice. But there are caveats to preliminary approval of the settlement—primarily related to attorney fees—which the court will explain below.

ANALYSIS

A. **Class and collective certification**

Federal Rule of Civil Procedure 23 governs certification for both federal collectives and state classes. *See Espenscheid v. DirectSat USA, LLC,* 705 F.3d 770, 772 (7th Cir. 2013). The court concludes that the Allen has satisfied each of the relevant Rule 23 requirements:

**Class definition.** The class includes all delivery drivers who worked at defendants' Wisconsin restaurants from July 23, 2019, to April 1, 2023. That definition is clear and uses objective criteria. *See* Fed. R. Civ. P. 23(c)(1)(B).

**Numerosity.** There are 483 potential members of the class and collective, which is numerous enough to make joinder impractical. *See* Fed. R. Civ. P. 23(a).

**Commonality, typicality, and adequacy of the named plaintiff.** All members of the class and collective were subject to the same reimbursement policy, and there are no known conflicts between the class and collective members. So there are common questions of law and fact, and Allen is an adequate representative who has claims that are typical of the class and collective. *See id.*

**Adequacy of counsel.** Class counsel have significant experience litigating and obtaining settlements for similar class and collective actions. *See* Fed. R. Civ. P. 23(g)(1); Dkt. 15, ¶ 5; Dkt. 16, ¶ 5. The court will approve Forester Haynie PLLC as class counsel.

**Predominance and Superiority.** The main issue in this case is whether defendants' rate for reimbursing driving-related expenses satisfies state and federal wage law. That is a common question, so the court concludes that common questions predominate over individual ones. A class action is superior to other methods of adjudicating the case because the large size

of the class and the small amount of damages for each class or collective member makes individual lawsuits impractical. *See* Fed. R. Civ. P. 23(b)(3).

**B. Preliminary approval**

A court may grant preliminary approval of a settlement if the court "will likely be able to" find that the settlement is "fair, reasonable, and adequate" after a hearing. Fed. R. Civ. P. 30(e)(2). The court raised several concerns about the settlement in its previous order. The court is satisfied that the parties addressed most of these concerns, but the court will clarify a few issues about the structure of the settlement.

Under the settlement agreement, the maximum amount to be paid by defendants is $182,000, which is divided up as follows:

- a "net settlement fund" of $93,833.33 for class and collective members;
- $10,000 for a "reserve fund";
- $60,666.67 for attorney's fees;
- $10,000 for the administrator;
- $5,000 for costs;
- $2,500 for Allen's incentive payment.

Dkt 17, ¶¶ 33–36.

The claims of the class and the collective are substantially identical, but the allocation between the class and collective is not. For employees who opt into the collective, they will receive a pro-rata share of the net settlement fund, based on the number of hours they worked. The average pro-rata share of an employee is approximately $194. For employees who neither opt into the collective nor opt out of the class, they will receive a payment of $30, regardless of how many hours they worked for defendants.

The parties represent that the reason for the disparity between the class and collective is that there is no case law in Wisconsin addressing what a reasonable reimbursement rate is, and the reimbursement rate set by the Wisconsin Department of Transportation ($.539/mile) is lower than the rate set by the Internal Revenue Service ($.565/mile), which is the basis for Allen's FLSA claim. These differences would not necessarily account for the significant disparity between the class and the collective. But the court is persuaded that the disparity is not itself a reason to reject the settlement because the potential members of the class are the same as the potential members of the collective. This means that any member of the class who wants a larger settlement is free to opt into the collective. And the notice sent to the employees will identify what each employee's pro-rata share is, *see* Dkt. 14-3, at 6, so the employees will know what they are giving up if they choose not to opt in.

The $93,833.33 that the parties represent as "the net settlement fund" is the sum of each employee's pro-rata share if all employees were to opt into the collective. This represents approximately one half of the maximum damages that Allen calculates the class and collective could receive if they succeeded on their claims but did not obtain liquidated damages. Dkt. 14, at 24. This is a fair discount based on the uncertainty in the law in this area of the law. As the parties point out, the Court of Appeals for the Seventh Circuit hasn't addressed how employers should calculate the reimbursement rate for a driver's vehicle-related expenses, and courts in other jurisdictions have reached different results, some relying on the IRS rate, and some leaving it for a jury to decide what a reasonable approximation of actual expenses is. *See* Dkt. 14, at 13–14, 19 (collecting cases).[1] A discount is also reasonable because the case has

---

[1] Liquidated damages are not awarded if the employer acted in good faith with reasonable grounds to believe that it did not violate the FLSA. *See Bankston v. State of Ill.*, 60 F.3d 1249,

4

settled early in the proceedings, and more litigation would raise costs, including potentially from experts who would testify about what a reasonable rate is.

But there is little chance that defendants will actually pay $93,833,33 to the class and collective. For one thing, the parties represent that the average opt-in rate for a case like this is 18 percent. Dkt. 14, at 7. If 18 percent of the class (87 employees) with an average of $194 claims opt-in, that is a total of approximately $17,000. The remaining 386 employees will get $30, for a total of $11,580. The class and collective combined would recover less than $30,000. Under the terms of the agreement, the remainder of the "net settlement fund" will be retained by defendants and not redistributed to other class members. Dkt. 17, ¶ 36(a). Even if a larger-than-normal percentage of employees opts in, there is a still possible ceiling well below $93,833.33. Specifically, if pay outs to employees who opt into the collective exceed $39,533.33, defendants have the right to cancel the settlement agreement. *Id*. These terms of the settlement agreement strongly suggest that the actual settlement amount going to the class and collective will be no more than $50,000 rather than a number approaching $93,833.33.

The parties also point to a $10,000 "reserve fund" for employees who file claims after the deadline, but the court declines to consider that fund as part of the benefits going to the class. As the parties have clarified in their renewed motion, they and the administrator will have discretion to determine which late claims to accept and how much to award, so there is no guarantee that any of the reserve fund will be awarded. Dkt. 14, at 9. Further, the parties did not respond to court's previous order directing them to explain why they believed that

---

1254 (7th Cir. 1995). In light of the lack of controlling authority on what qualifies as reasonable reimbursement for vehicle-related expenses, the court agrees with the parties that an award of liquidated damages would be unlikely in this case.

5

there was likely to be $10,000 in late claims, *see* Dkt. 13, at 7, which suggests that the amount is likely to be much less than $10,000. Any part of the reserve fund that isn't paid to satisfy a late claim will revert to defendants, Dkt, 17, § 37(f), so it doesn't make sense to consider that fund as part of the benefits going to the class and collective.

The provisions in the settlement agreement limiting the amount going to the employees aren't necessarily unreasonable. As already discussed, employees will receive notice of their pro-rata share—which the court has preliminarily determined is reasonable—and the employees will have an opportunity to submit a claim for that amount. If the pay outs for members of the collective exceeds $39,533.33, defendants have the option to cancel the agreement, but they aren't required to do so. And if they do cancel the agreement, the class and collective are not worse off than when they started.

But this doesn't mean that the provisions being discussed have no implications for approval of the settlement. Plaintiff's counsel is relying primarily on the percentage-of-recovery method to justify their requested fee, which is exactly one-third of the total settlement fund. But as the court reminded the parties in its previous order, "[t]he ratio that is relevant to assessing the reasonableness of the attorney's fee that the parties agreed to is the ratio of (1) the fee to (2) the fee plus what the class members received." *Redman v. RadioShack Corp.*, 768 F.3d 622, 630 (7th Cir. 2014). This means that: (1) costs are not included in the denominator when assessing the reasonableness of attorney fees; and (2) the percentage is based on what the class members actually receive, not on a theoretical number. *See Camp Drug Store, Incorporated v. Cochran Wholesale Pharmaceutical, Incorporated,* 897 F.3d 825, 833 (7th Cir. 2018) (affirming

6

the district court's decision to limit class counsel's attorney fees to "one-third of what the members of the plaintiff class actually recovered").[2]

The bottom line is that the court will preliminarily approve the proposed settlement, with the caveat that plaintiff's counsel must justify its fee request based on the actual recovery of the class and collective. Under this approach, counsel's fees are likely to be substantially higher than one-third of the fee and recovery combined. In that event, counsel will have to show why they are entitled to a larger share.

The parties' motion for final approval of the settlement and plaintiff's counsel's motion for attorney fees should also include the following information. First, the parties should clearly describe all the efforts they took to provide notice to the class members, being as specific as possible. This includes the efforts to locate employees whose mail notices are returned as undeliverable. The court expects the administrator to contact those employees by text message or email, as indicated in the parties' renewed motion. Dkt. 14, at 8. Notice of the settlement is important in every case, but it is especially important in a case like this one in which both sides have an incentive to keep the number of opt-in plaintiffs low. The parties should also identify the number of class and collective members the parties were unable to reach by mail and how the parties determined whether notice was received.

Second, the parties should identify the amount of the settlement fund that class and collective members have claimed. As already discussed, this will be key in assessing the reasonableness of any fee request.

---

[2] The parties cite district court decisions allowing class counsel to use the entire settlement fund as the relevant denominator, but those cases are not controlling, and the parties cite no Seventh Circuit or Supreme Court authority overruling or undermining *Redman*.

Third, class counsel's motion for attorney fees must comply with the court's procedures for fee petitions, which may be found on the court's website.[3] Although counsel is relying on the percentage-of-recovery method to justify their fee request, this court requires a lodestar cross check, as it is entitled to do. *See Americana Art China Co. v. Foxfire Printing & Packaging, Inc.*, 743 F.3d 243, 247 (7th Cir. 2014). And because counsel's fee request is likely to be a relatively high percentage of the recovery, it will be especially important to show that the request is justified under a lodestar approach.

Fourth, the parties should address what should happen to any money left if the court reduces the requested attorney fees. Can the money be redistributed to the class and collectives, or must it revert to defendants?

Fifth, and finally, 28 U.S.C. § 1715(b) requires counsel to give notice of the class settlement to certain state and federal officials, and the court must wait 90 days after notice is provided before approving the settlement. If they haven't already done so, the parties should notify the appropriate officials at the same time they notify the class and the collective.

ORDER

IT IS ORDERED that:

1. The following class and collective is certified under Federal Rule of Civil Procedure 23 and 29 U.S.C. § 216(b): "All persons who worked for Defendants at Domino's Pizza stores in Wisconsin as delivery drivers between July 23, 2019 through April 1, 2023."

2. The court approves Forester Haynie PLLC as class counsel.

---

[3] *See* https://www.wiwd.uscourts.gov/sites/default/files/Attachments_PTC_JDP.pdf.

3. The parties' motion for preliminary approval of the settlement, Dkt. 17, is GRANTED.

4. The claims administrator may have until June 1, 2023, to send out the class notices, giving members 50 days to opt in to the collective, opt out of the class, or file an objection.

5. The parties may have until August 1, 2023, to file a motion for final approval and a motion for fees and costs.

6. The court will hold a fairness hearing on August 29, 2023.

Entered May 17, 2023.

                        BY THE COURT:

                        /s/

                        _____
                        JAMES D. PETERSON
                        District Judge