IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| DANIEL ALLEN, individually and on behalf of similarly situated persons,<br><br>Plaintiff,<br><br>v.<br><br>LANIER, INC. and MICHAEL H. LANIER,<br><br>Defendants. | Case No. 3:22-cv-00268-JDP<br><br>Honorable James D. Peterson |

**PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS
AND COLLECTIVE ACTION SETTLEMENT AGREEMENT
AND MEMORANDUM IN SUPPORT**

Named Plaintiff Daniel Allen, individually and on behalf of all others similarly situated ("Plaintiff"), moves the Court for final approval of the Parties' class and collective action settlement. A copy of the Parties' agreed-upon Settlement and Release Agreement ("Settlement Agreement") and the Class Notice and Claim Form have previously been filed. The declaration of attorney Katherine Serrano in further support of this Settlement along with a declaration and status report from the Third-Party Administrator are attached hereto as Exhibits to this Motion. The Court has previously preliminarily approved the settlement under the Fair Labor Standards Act and preliminarily approved the settlement pursuant to Federal Rule of Civil Procedure 23. Following dissemination of notice, no objections were raised to any aspect of the Settlement and only one Class Member requested to be excluded from the Settlement. Similarly, Defendants do not oppose this Motion and the relief sought herein. The Settlement meets the standards for final approval of a class and collective action settlement as previously established under the FLSA, Rule 23, and by the Seventh Circuit and should accordingly be approved for the additional reasons that follow.

1

**MEMORANDUM IN SUPPORT**

**I.    FACTS AND PROCEDURAL HISTORY**

Plaintiff filed this lawsuit ("the Litigation") individually and on behalf similarly situated delivery drivers who were hired to deliver pizzas for Defendants. Plaintiff alleges that Defendants violated the Fair Labor Standards Act ("FLSA") and Wisconsin Minimum Wage Law by failing to pay Plaintiff and other similarly situated delivery drivers the lawful and applicable minimum wage because their expense reimbursements were alleged to be insufficient to cover their automobile expenses while delivering pizzas for Defendants. Defendants categorically deny Plaintiff's allegations and submit Plaintiff and all other delivery drivers were paid lawfully and in compliance with the FLSA and related state laws. The Parties participated in an alternative dispute resolution ("ADR") process that included a full-day in-person mediation before an experienced wage and hour class and collective action mediator, Allen Blair, Esquire. Prior to the mediation, the Parties engaged in extensive pre-mediation discovery that included the production of mileage and mileage reimbursement data for each store where Settlement Class Members were employed by Defendants. In preparation for the mediation, the Parties drafted detailed mediation statements and damages analyses. Based on this information, Plaintiff was able to review, analyze and formulate potential damage calculations under the FLSA and applicable state laws. The Parties reached a resolution in principle through mediation that received additional direction and preliminary approval from this Court in the following months.

From Plaintiff's perspective, the Settlement Agreement provides an excellent outcome for the Settlement Class Members. Defendants contend that they properly reimbursed the delivery drivers' automobile expenses and complied at all times with the FLSA and applicable state wage and hour laws. Defendants further contend that even if liability were established by Plaintiff, which

they deny, they acted in good faith and that a two-year, as opposed to an extended, statute of limitations should apply to Plaintiff's claims. Defendants also dispute that Plaintiff's claim is appropriate for class or collective action treatment, except for settlement purposes. If the Court were to accept these arguments, it would negate a substantial percentage, or all, the alleged damages in the case.

On May 18, 2023, the Court granted preliminary approval of the FLSA and Rule 23 Settlement Agreement. Pursuant to that Order, the Parties, through a third-party claims administrator, CAC Services Group ("CAC"), sent the approved Notice of Class Action Settlement and Claim Form ("Notice Packet") to all Settlement Class Members. On May 19, 2023, Defendants provided CAC an electronic list of four hundred eighty-three (483) persons identified as potential class members. **Exhibit 2**, Johnson Declaration ¶ 8. The class list provided names, last known addresses, last known phone number, email addresses, social security numbers and miles driven. *Id.* Prior to sending the Notice, CAC updated the class member list using the National Change of Address system ("NCOA"), which updates the addresses for all persons who had moved in the previous four years and who had filed a change of address with the U.S. Postal Service. *Id.*

On June 1, 2023, CAC printed 483 individualized Notice Packets and mailed them to each class member using first class postage.[1] *Id.* Of the 483 Notice Packets, 13 were returned to CAC with a forwarding address. *Id.* at ¶ 9. CAC subsequently mailed the Notice Packet to these new addresses. *Id.*

The U.S. Postal Service returned 143 Notice Packets without a forwarding address. For these Notice Packets, CAC conducted a skip trace using enhanced people search which helps locate

---

[1] CAC also mailed Class Action Fairness Notice ("CAFA") notices to the appropriate federal and state government officials by Certified First Class Mail on December 19, 2022 and May 1, 2022. Johnson Declaration ¶ 5-6. Defendants have, therefore, complied with CAFA's notice requirements.

3

and identify the personal history of an individual. *Id.* at ¶ 10. Data sources queried include millions of public records including over 960 million registered land and wireless phone numbers, Credit Bureau Header files and proprietary alternative consumer credit data. *Id.* The enhanced people search resulted in 91 new addresses. CAC also contacted these class members by email and text message to obtain their new address. *Id.* As a result of this effort, 21 new addresses were obtained. *Id.* CAC mailed the Notice Packet to these new addresses. *Id.* As a result of CAC's efforts, the Parties were able to determine that 452 (93.6%) of the Notice Packets were delivered to class members. *Id.*

The Notice Packets contained all the information necessary to notify all Settlement Class Members of the date and time of the Fairness Hearing, along with contact information to obtain additional information regarding the Fairness Hearing. The Parties have fully complied with the terms of the Court's Order. Following notice:

1. There were no objections to the Settlement,

2. Only one Settlement Class Member requested to be excluded from the settlement,

3. No Settlement Class Member has requested to participate in the Fairness Hearing. *See generally* **Exhibit 2**, Johnson Declaration, and,

4. The Eastern District of Wisconsin granted final approval of a settlement in *Lewis v. Lucky 2 Logistics, LLC*, Case 2:19-cv-323 (E.D. WI) and in *Burton v. AMNJ Enterprises, Inc. et al.*, Case No. 2:19-cv-164 (E.D. WI), of hybrid wage and hour disputes brought on behalf of delivery drivers that tracks the same settlement structure negotiated here.[2]

---

[2] *See also Rocha v. Chiodo Corporation, et al.*, Case No.1:20-cv-01902 (N.D. IL) (granting final approval of a hybrid wage and hour dispute brought on behalf of delivery drivers that tracks the same settlement structure here).

4

As this Motion and the relief requested herein is wholly unopposed by Class Members and Defendants, the Court should grant Plaintiff's Motion.

## II.     KEY SETTLEMENT TERMS

The settlement class is defined as:

All persons who worked for Lanier, Inc. at their Domino's Pizza stores as delivery drivers at any time from July 23, 2019, through April 1, 2023.

The Parties agreed to settle all putative class members' wage and hour claims by Defendants establishing a settlement fund inclusive of payments to the putative class, attorneys' fees, litigation costs, administration costs, and a modest service award to the Named Plaintiff. Each Participating Class Member will receive a minimum payment. Authorized Claimants will receive a settlement payment based on their miles driven, pursuant to the terms of the Agreement.

The release binding Participating Class Members who do not opt out is limited to wage and hour claims pursuant to Wisconsin state law and Rule 23. Authorized Claimants, who have affirmatively opted-in to the FLSA settlement that was previously preliminarily approved, have also agreed to release federal wage and hour claims pursuant to the federal Fair Labor Standards Act ("FLSA"), pursuant to the terms of the Agreement.

The Parties have fully complied with the terms of the Court's Order preliminarily approving the Agreement and remain committed to fully and fairly administering the settlement distribution to the Class, and have further agreed to establish and administer a three-year Reserve Fund Period for any late claims in the continued interest of the Class Members and judicial economy. There have been no objections to the Agreement. Similarly, no Delivery Driver or Settlement Class Member has requested to participate in the Fairness Hearing and only one (1) individual has requested to be excluded from the Settlement. *See generally*, **Exhibit 1**.

Subject to this Court's final approval, the total payments to be made by Defendants under the Agreement include the following:

5

1. As further detailed below, Plaintiff Allen will receive a service award in the amount set forth in the Agreement in recognition of the work involved and the benefits achieved by the Plaintiff.

2. The Settlement Claims Administrator, CAC Services Group, LLC, will receive their actual costs incurred in administering the Settlement, not to exceed the amount set forth in the Agreement.

3. All Participating Class Members who did not submit a claim will receive a minimum payment from the Minimum Payment Fund. Because these individuals did not affirmatively opt-in to the settlement, they will retain all rights under federal law and pursuant to the FLSA's opt-in provisions and the applicable statute of limitations. A Reserve Fund has been established for any late claims. The total amount of payments from the Minimum Payment Fund is $12,180.00.

4. All Authorized Claimants who did elect to affirmatively opt-in to this Settlement, will receive their pro-rata share of the FLSA Claim Fund. Following the settlement notice period, approximately 15.7%[3] of Settlement Class Members have elected to opt-in to this fund and will receive additional consideration in exchange for the additional release of their federal FLSA claims based on their actual mileage. Based on the Authorized Claimants who have elected to opt-in, the amount of payments from the FLSA Claim Funds is $31,764.11.

5. Any unclaimed funds remaining following the initial distribution of the Settlement

---

[3] This level of participation is in line with prior class actions handled for delivery drivers by Class Counsel. *See e.g.*, *Rechtoris v. Dough Management, Inc. et al.*, Case 3:18-cv-708 (N.D. IN.)(21%); *Brewer v. Lil Daddy Pizza LLC, et al.*, Case No. 1:21-cv-00195 (S.D. MS)(18% opt-in rate); *Smith v. Southeastern Pizza People, Inc. et al*, Case 7:19-cv-105 (E.D. N.C.)(20%); *Ball v. New River Valley Pizza, LLC, et al*, Case 7:19-cv-362 (W.D. VA.)(16%); and, *Fitzgerald v. Roman's Road Pizza, Inc. et al.*, Case No. 4:20-cv-577 (E.D. MO)(15%).

Funds will be held in the Reserve Fund. Under the terms of the Agreement, all Settlement Class Members who have neither excluded themselves from the settlement nor Opted-In to the Settlement will remain eligible to submit a claim for up to the full amount of their share of the FLSA Claim Fund from this Reserve Fund for an additional three years following April 1, 2023.

6. As further detailed below, Class Counsel will receive fees in the amount of one-third of the total settlement and actual costs not to exceed the amount set forth in the Agreement.

### III. THE COURT SHOULD GRANT PLAINTIFF'S MOTION

#### A. The Settlement is Fair, Reasonable, and Adequate Pursuant to the FLSA and Rule 23

"Federal courts look favorably upon the settlement of class action lawsuits." *McKinnie v. JP Morgan Chase Bank, N.A.*, 678 F. Supp. 2d 806, 811 (E.D. Wis. 2009) (citing *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir.1996). This is "particularly important" in complex, multi-party litigation which is likely to require substantial court time over a period of years. *In re VMS Ltd. P'ship. Sec. Litig.*, 1995 WL 355722, at *2 (N.D. Ill. Jun. 12, 1995) (citing *In re Four Seasons Sec. Laws Litig.*, 60 F.R.D. 598, 602 W.D. Okla. 1973)); *see also* 2 Herbert B. Newberg & Alba Conte, Newberg on Class Actions § 11.41 (3d ed. 1992) (collecting cases). The traditional means for handling wage claims like those at issue here — individual litigation — would unduly tax the court system, require a massive expenditure of public and private resources and given the relatively small value of the claims of the individual Class Members, would be impracticable. *See Fox v. Iowa Health Sys.*, No. 3:18-CV-00327-JDP, 2021 WL 826741, at *3 (W.D. Wis. Mar. 4, 2021). The proposed Settlement, therefore, is the best vehicle for Class Members to receive the relief to which they believe they are

entitled in a prompt and efficient manner. The *Manual for Complex Litigation* describes a three-step procedure for approval of class action settlements:

1. Preliminary approval of the proposed settlement at an informal hearing;

2. Dissemination of mailed and/or published notice of the settlement to all affected class members; and

3. A "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*Manual for Complex Lit.,* at § 21.632–34. This procedure, used by courts in this Circuit and endorsed by the leading class action treatise, safeguards the due process rights of absent class members and enables the Court to fulfill its role as the guardian of class interests. *See* 2 Newberg & Conte, § 11.22, *et seq.*

The Court previously granted preliminary approval of the class and collective action portions of the Settlement. The Preliminary Approval Order (ECF No. 18) made specific preliminary findings that the Class met each of the four Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy. The Court also found that the Class met each of the Rule 23(b)(3) requirements: predominance and superiority. Since that Order, notice was disseminated, the Parties have fully complied with the Court's Order, and multiple courts in this Circuit have finally and fully approved hybrid wage and hour matters brought by Class Counsel with a nearly identical settlement structure and fee request.[4]

This case is now at the final approval stage and the Parties seek approval of their class and collective action settlement. At the final approval stage, courts consider six factors:

---

[4] *See Rocha v. Chiodo Corporation, et al., Case No.1:20-cv-01902* (N.D. IL) (previously approving a hybrid settlement structure in matter handled by Class Counsel); *Lewis et al. v. Lucky 2 Logistics, LLC*, Case 2:19-cv-323 (ED WI) (same); *Burton v. AMNJ Enterprises, Inc. et al.*, Case No. 2:19-cv-164 (E.D. WI) (same); *Rechtoris v. Dough Management, Inc. et al.*, Case 3:18-cv-708 (N.D. IN.) (same).

> (1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed.

*Shah v. Zimmer Biomet Hldgs.*, 2020 U.S. Dist. LEXIS 89141, *5-6 (N.D. Ind. May 21, 2020) (quoting *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014); citing FED. R. CIV. P. 23(e)(2) (enumerating factors for courts to consider in determining whether a settlement is fair, reasonable and adequate)). Here, all six factors strongly indicate that final approval of the class action settlement is warranted.

### Factor 1: The strength of the case for Plaintiff on the merits, balances against the extent of settlement offer

Plaintiff's claims are supported by evidence, but ultimately that claim may depend upon persuading a jury to adopt their evidence over Defendants' competing evidence and arguments. Predicting how a jury would weigh the evidence here is particularly difficult because no known benchmarks exist for how a jury might decide or value the claims. Consequently, it is possible the class members would recover less than the damages they allege, or no damages at all. Plaintiff and his Counsel necessarily, and properly, weighed the risk of proceeding with an assured recovery obtained through negotiation. In sum, the uncertainty of a jury trial warrants settlement approval.

Plaintiff further recognizes some risk of denial of class certification. S*ee Sullivan v. PJ United, Inc.*, 2018 WL 10345326, at *1 (N.D. Ala. June 22, 2018). Plaintiff's Counsel weighed that risk in negotiating the settlement amount. The recovery here falls well within the range of comparable settlements approved around the nation in wage and hour claims in that the negotiated maximum settlement amount equates to a little more than the midway point between the IRS rate and the actual reimbursement rate paid by Defendants to delivery drivers minus an offset for payments above the minimum wage, which is well within the range of fairness as determined

previously by courts.[5] A balancing of the strength of Plaintiff's case on the merits against the extent of the settlement offer weighs heavily in favor of settlement approval.

**Factor 2:** **The complexity, length, and expense of further litigation**

District Courts in this Circuit have acknowledged that class actions can be "time-consuming and expensive." *Schmidt v. Bassett Furniture Indus.*, No. 08-C-1035, 2009 WL 3380354, at *11 (E.D. Wis. Oct. 20, 2009). This case is no exception. By reaching a favorable settlement now, the Parties have avoided the need to resolve significant and time-consuming motions and discovery issues and the resources a jury trial would have entailed. In addition, reducing the class trial to a judgment and the eventual appeal would likely involve complex and time-consuming issues. Making substantial monetary relief available now and during the Reserve Fund Period, without significant additional time, effort, or risk, should weigh heavily in favor of approval.

**Factors 3 & 4: The amount of opposition to the settlement and the reaction of members of the class to the settlement**

After dissemination of the Court-approved notice, no class member has objected to any term of the settlement, which indicates that the class is generally pleased with the result. See, e.g., *Mehling v. New York Life Ins. Co.,* 248 F.R.D. 455 (E.D. Pa. 2008) (finding that the absence of any objections weighed in favor of approving a class action settlement). Furthermore, only one class member has elected to be excluded from the settlement.

**Factor 5:** **The opinions of competent counsel**

---

[5] *Lewis et al. v. Lucky 2 Logistics, LLC*, Case 2:19-cv-323 (E.D. WI)(40% of potential damages recovered); *Burton v. AMNJ Enterprises, Inc. et al.*, Case No. 2:19-cv-164 (E.D. WI)(38%); *see also Selk v. Pioneers Memorial Healthcare Dist.*, 159 F.Supp.3d 1164, 1172 (S.D. Cal. 2016) (26% or greater recovery of potential damages sufficiently reasonable in wage and hour dispute); *Jones v. Agilysis, Inc.*, 2014 U.S. Dist. LEXIS 68562, *9-10 (N.D. Cal. May 19, 2014) (30% or greater recovery of potential damages in wage and hour dispute constituted a "tangible monetary benefit" for the class members).

Courts place significant weight on the endorsement of experienced class counsel. *Isby*, 75 F.3d at 1200; *In re Mexico Money*, 164 F. Supp. 2d at 1020, 1019 (N.D. Ill. 2000). Counsel for both sides fully support the Settlement Agreement, and this factor favors final approval of the Settlement. *Great Neck Cap. Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*, 212 F.R.D. 400, 410 (E.D. Wis. 2002); *Leung v. XPO Logistics, Inc.*, 326 F.R.D. 185, 197 (N.D. Ill. 2018). When evaluated in light of the relevant factors, the proposed settlement is fair, reasonable, and adequate and should be approved.

**Factor 6:** **The stage of the proceedings and amount of discovery completed**

Counsel for the Parties have litigated several similar claims by delivery drivers around the nation. Because of this experience, they were able to quickly and efficiently identify the critical data needed to both evaluate the claims and calculate potential damages. That data was disclosed, then utilized to evaluate both potential liability and various damage scenarios. The Parties were also able to laser-focus their settlement efforts. Thus, both sides understood the relevant evidence prior to settlement, and efficiently achieved settlement without additional involvement by this Court. Such achievement warrants settlement approval.

**B. Attorneys' Fees and Costs Provided in the Settlement are Appropriate**

The Settlement Agreement provides that Plaintiff's counsel will recover their fees from the Settlement Fund. The FLSA and the IMWL contain fee- and cost-shifting provisions. The Seventh Circuit recognizes that where an employee prevails in an action brought under the FLSA, an award of attorneys' fees is mandatory. *Alyeska Pipeline v. Wilderness Society*, 421 U.S. 240, 261 n.34 (1975); *Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399, 406 (7th Cir. 1999). Plaintiff's Counsel seeks recovery of approximately 1/3 of the Settlement fund. Further, Plaintiff's Counsel accepted this case on a contingency fee basis and has worked diligently to obtain relief for minimum wage

workers. *See, e.g., Gaskill v. Gordon*, 160 F.3d 361, 362-63 (7th Cir. 1988) ("The typical contingent fee is between 33 and 40 percent"); *McDaniel v. Qwest Commun's. Corp.*, 2011 U.S. Dist. LEXIS 154591, *11-12 (N.D. Ill. Aug. 29, 2011) ("the real-world market range for contingent fee cases is 33% to 40%).

The Supreme Court has "recognized consistently that ... a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). Similarly, the Seventh Circuit and district courts within it widely recognize the reasonableness of an attorney fee award as a percentage of the common fund. *Florin v. Nationsbank of Georgia*, 34 F.3d 560, 563 (7th Cir. 1994); *Furman v. At Home Stores LLC*, 2017 WL 1730995 (N.D. Ill. May 1, 2017); *Briggs v. PNC Financial Services Group*, 2016 WL 7018566 (N.D. Ill. Nov. 29, 2016); *Koszyk v. Country Financial*, 2016 WL 51909196 (N.D. Ill. Sept. 16, 2016). Based on this precedent, Plaintiff submits that the attorneys' fees request of 1/3 of the common fund is fair, reasonable, and should be approved.

To further ensure a fee award is reasonable, this Circuit considers "the *Hensley* factors:"

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Anderson v. AB Painting & Sandblasting, Inc.*, 578 F.3d 542, 544 & n. 1 (7th Cir. 2009) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 430 n.3 (1983).

***Hensley* Factors (2), (3), (9), & (10): Novelty and Difficulty of the Questions Presented; Skill, Experience, Reputation, and Ability of the Attorneys; and "Undesirability" of the Case.**

12

Plaintiff's Counsel possess extensive experience in all types of wage and hour litigation. Plaintiff's Counsel has years of experience in wage and hour law, and specifically representing minimum wage workers who are delivery drivers. *See* **Exhibit 3**, Serrano Declaration. The litigation involves very specific and novel questions of law, an area where relatively few attorneys have experience. The minimum wage nature of this litigation and limited individual damages at issue also discourages many other wage and hour attorneys from taking on these cases. This area of the law is not well-settled, and as a result, not many attorneys are willing to take on this type of litigation, even on a class basis. In light of the novelty and difficulty of the questions presented, the skill, experience, reputation, and ability of Plaintiff's attorneys, and "undesirability" of the case, *Hensley* factors (2), (3), (9) and (10) all strongly support Plaintiff's Counsels' requested fee.

### *Hensley* Factors (5) & (8): Amount Involved and Results Obtained; and Customary Fee.

The Supreme Court recognizes that the result achieved is "the most critical factor" in calculating a reasonable fee award. *Hensley*, 461 U.S. at 436; *Robinson v. Perales*, 894 F.3d 818, 835 (7th Cir. 2018) (following *Hensley* and *Farrar v. Hobby*, 506 U.S. 103, 108 (1992)).

As noted above, given the novelty and difficulty of wage and hour class actions, the delivery drivers' recovery at trial could have ranged anywhere from a sizable recovery to very little to nothing at all. Thus, the amount agreed to by the Parties following an informed mediation is a very successful result for Plaintiff and all other delivery drivers. *See* fn. 4, *supra*. The total settlement amount is the result of good faith, but contentious, arm's length negotiation and represents an excellent result for the class. *Id*. Additionally, all class members will receive some form of payment. Some class members will receive substantial payments for their alleged underpayment of reimbursement expenses, based on their affirmative decision to opt-in to the

settlement and their individual mileage information. Class Counsel also negotiated a separate Reserve Fund, which will provide additional opportunities for Class Members to collect fund without incurring the delay or costs of additional litigation. Moreover, the Named Plaintiff signed a contingency fee agreement with Plaintiff's Counsel agreeing to fees equaling 40% of the common fund. However, Plaintiffs' Counsel cut their percentage and fee request to one-third (1/3) to increase the amount paid to Class Members and minimize delay.

*Hensley* **Factors (1) & (4): Time and Labor Expended; and Preclusion of Other Work.**

Accounting for time pursuing settlement approval, assisting in settlement distribution, and responding to numerous inquiries from class members throughout the duration of the litigation and settlement distribution through the Reserve Fund Period, the fee request should compensate Class Counsel for actual time incurred. To date and even when time by staff and subordinate attorneys is wholly excluded, Plaintiffs' counsel has already spent over 100 hours litigating this case with no assurance of any recovery at all. *See* **Exhibit 3**, Serrano Decl. This includes time spent investigating the facts, preparing and filing pleadings; reviewing documents produced by the Named Plaintiff and by Defendants; analyzing Defendants' reimbursement and mileage data; communicating with Plaintiff and Class Members; creating computerized damages models; researching and drafting a mediation statement; participating in the mediation; negotiating the terms of the settlement; multiple hearings, conferring with counsel extensively, drafting approval papers; and seeking Court approval of the settlement. *Id.*

| Name | Position | Rate | Hours | Lodestar |
|---|---|---|---|---|
| J. Forester | Attorney (Partner) | $740/hour | 53.5 | $39,590 |
| Katherine Serrano | Attorney | $350/hour | 62.5 | $21,875 |
| Total | | | | $61,465 |

Plaintiff's Counsel's lodestar is based on their most recently approved and utilized hourly billing rates in similar matters and fully accounts for the time incurred thus far in the litigation. *See* Serrano Decl. When no accounting is done for additional time to be incurred throughout the completion of the litigation and throughout the three year-long Reserve Fund Period, a lodestar cross check would further produce a multiplier that falls well within the range of multipliers approved in this Circuit. See, e.g., *Ramsey v. Philips N. Am. LLC*, 2018 U.S. Dist. LEXIS 226672, *12 (S.D. Ill. Oct. 15, 2018) ("in risky litigation such as this, lodestar multiplier can be reasonable in a range between 2 and 5") (quoting *Spano v. Boeing Co.*, 2016 U.S. Dist. LEXIS 161078, *11 (S.D. Ill. Mar. 31, 2016)). Accounting for time to be incurred, the multiplier falls below 1 and the fee request fully compensates Plaintiff's Counsel for time actually incurred. These facts and factors again support final approval of the Settlement.

*Hensley* **Factor (12): Awards in Similar Cases.**

As set forth above and in the attached declaration of attorney Katherine Serrano, Plaintiff's Counsel's fees have been approved in related and prior wage and hour litigation. Notably, the percentage method is approved in this Circuit and is the preferred method of fee recovery because, among other things, it aligns the lawyers' interest in being paid a fair fee with the interest of the clients and most fairly correlates counsel's compensation to the benefit conferred on the clients. *Florin v. Nationsbank of Georgia*, 34 F.3d 560, 563 (7th Cir. 1994); *Furman v. At Home Stores LLC*, 2017 WL 1730995 (N.D. Ill. May 1, 2017); *Briggs v. PNC Financial Services Group,* 2016 WL 7018566 (N.D. Ill. Nov. 29, 2016); *Koszyk v. Country Financial*, 2016 WL 51909196 (N.D. Ill. Sept. 16, 2016).

Compensating counsel in common fund cases on a percentage basis makes good sense. It rewards efficiency and provides Plaintiff's Counsel with a strong incentive to effectuate the

15

maximum possible recovery under the circumstances. Additionally, use of the percentage method decreases the burden imposed on the court by the "lodestar" method and assures that plaintiffs do not experience undue delay in receiving their share of the settlement. The diligent and highly efficient work by Plaintiff's Counsel in obtaining relief for the delivery drivers should be appropriately compensated. Given the risks they incurred in litigating this case on a contingent fee basis, the requested attorneys' fees are reasonable and appropriate in this case.

If the Court reduces the amount of attorneys' fees, the reduced amount shall be added to the FLSA Claim Fund and increase the pro rata share of the settlement received by each Settlement Class Member who submitted a timely and valid Claims Form.

### C. Named Plaintiff Should Receive a Service Award

Service awards "are justified when necessary to induce individuals to become named representatives." *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 722 (7th Cir. 2001).[6] The request made here and detailed in the Settlement Agreement is within the range that has repeatedly been approved by federal courts, including in matters handled by Class Counsel. *See e.g., Lewis et al. v. Lucky 2 Logistics, LLC*, Case 2:19-cv-323 (ED WI).[7] The service award should also be approved because Mr. Allen substantially assisted Class Counsel in achieving this settlement on behalf of the class, and this time and effort is deserving of a service award. Defendants do not oppose the service award and there were no objections raised to this term or to the settlement generally during the notice period.

### IV. CONCLUSION

---

[6] *See also, In re Ready-Mixed Concrete Antitrust Litig.*, 2010 U.S. Dist. LEXIS 30776, *35-36 (S.D. Ind. Mar. 30) (surveying incentive awards granted within the Seventh Circuit ranging from $5,000.00 to $100,000.00 and awarding the named plaintiff a $10,000.00 incentive award).

[7] *See also, Bessey v. Mand Made Pizza, Inc. et al.*, Case 1:18-cv-00938-LTB (D. CO.); *Marnoch and Breit v. GBR Pizza, Inc. et al*, Case 5:19-cv-257 (E.D. N.C.); *McFadden v. NFSM Pizza, Inc., et al.*, Case 18-cv-204 (D. WY.).

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests that the Court grant this Motion and issue an Order in the attached proposed form, which grants final approval to the Parties' Settlement and dismisses the claims with prejudice, with each Party to bear its own fees and costs except as previously agreed between them.

Respectfully submitted,

*/s/ Katherine Serrano*
Katherine Serrano*
D. Matthew Haynie
**FORESTER HAYNIE PLLC**
400 N. St. Paul St., Ste. 700
Dallas, Texas 75201
T: (214) 210-2100
F: (469) 399-1070
kserrano@foresterhaynie.com
matthew@foresterhaynie.com
*Admitted pro hac vice*

## CERTIFICATE OF SERVICE

A copy of the foregoing document was served on all parties and counsel of record via the Court's Electronic Filing System.

*/s/ Katherine Serrano*
Katherine Serrano

## CERTIFICATE OF CONFERENCE

I hereby certify that I conferred with Defense counsel and, pursuant to the terms of the Parties' Settlement Agreement, was advised that Defendants do not oppose the relief requested herein.

*/s/ Katherine Serrano*
Katherine Serrano